## Tidewater Field Warehouses, Inc., *v.* Fred Whitaker Company, Inc., Appellant.

Argued April 16, 1952. Before DREW, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Walter B. Gibbons,* for appellant.

*Howard R. Detweiler,* with him *Frank R. Ambler,* for appellee.

OPINION BY MR. CHIEF JUSTICE DREW, May 26, 1952:

This action in assumpsit is another phase of the legal proceedings arising out of the death of Hugh E. Donnelly for which his administratrix recovered judgments totalling $42,478.00 against Tidewater Field Warehouses, Inc., plaintiff herein. See *Donnelly v. Fred Whitaker Co.,* 364 Pa. 387, 72 A. 2d 61. The sole question here is whether the indemnity clause in a lease between Tidewater and Fred Whitaker Company, Inc., defendant, indemnified Tidewater from losses resulting from its own negligence. The learned court below held that it did and accordingly entered judgment on the pleadings for Tidewater. This appeal followed.

Whitaker is an importer and processer of raw wool. In order to avoid paying import duty immediately on the arrival of the wool, it is stored in a bonded warehouse subject to joint control by the warehouseman and the U. S. customs officials. Pursuant to this practice

Whitaker entered into a lease and warehouse agreement with Tidewater on July 15, 1946. By the terms of those agreements Whitaker leased the warehouse to Tidewater and in return Tidewater agreed to store only Whitaker's wool therein. It was further provided that Whitaker would supply all labor necessary for handling the wool but that the labor would be subject to the exclusive control of Tidewater.

On May 1, 1947, Donnelly, a customs inspector, was killed when a bale of wool was pushed down and fell on him. Suit was brought against Whitaker which brought on the record Tidewater as an additional defendant. The jury returned verdicts against both Whitaker and Tidewater on which judgments were entered. On appeal we reversed as to Whitaker holding that by the terms of the agreement the employe whose negligence caused Donnelly's death was the exclusive agent of Tidewater at the time of the accident and accordingly it alone was liable. We recognized the existence of the indemnity clauses in the agreements but held further that "Tidewater's right to indemnity must be determined in an action on the contract and cannot be adjudicated in this trespass suit." It is to determine the rights growing out of those clauses that Tidewater has brought this action in assumpsit against Whitaker. It is Whitaker's position that the indemnity clauses were designed only to protect Tidewater from claims arising out of its occupancy of the premises but not to include claims arising as a result of acts of negligence on its part. We are of the opinion that the lower court correctly rejected this argument.

The law on this subject is quite clear. In the absence of a clear expression of intent to the contrary a contract of indemnity will not be construed to indemnify against the negligence of the indemnitee: *Darrow v. Keystone Stores, Inc.,* 365 Pa. 123, 74 A. 2d 176;

*Perry v. Payne,* 217 Pa. 252, 66 A. 553. However, a person may indemnify himself against his own negligence provided the intention to do so is clearly expressed: *Siegel Co. v. Phila. Record Co.,* 348 Pa. 245, 35 A. 2d 408; *Wright v. Sterling Land Co., Inc.,* 157 Pa. Superior Ct. 625, 43 A. 2d 614; *Lerner v. Heicklen,* 89 Pa. Superior Ct. 234.

With these principles in mind we find three indemnity clauses in the agreements. The warehouse agreement provides that Whitaker agrees to indemnify Tidewater "of and from all fines, penalties, suits, taxes, claims, demands, actions or cause of actions of any kind or nature or anyone whomsoever by reason of the occupancy of the said demised premises · by [Tidewater.]" A clause substantially similar to that one is also found in the lease. If those two clauses were the only provisions on the subject, this case would be ruled by *Darrow v. Keystone Stores, Inc.,* supra, where we held that a clause covering damage due to occupancy does not indemnify a party against his own negligence.

A third provision was, however, included in the lease which stated: "[Whitaker], throughout the term of this lease agreement, shall maintain and pay for at its own cost and expense the following: Adequate liability insurance for injuries to any person, except employes of [Tidewater], on or about the demised premises and *does hereby assume and agree to pay all damages to property or persons upon the demised premises and to save [Tidewater] harmless therefrom."* (Italics added.)

That paragraph clearly and specifically covers all damages however caused. It is not, as Whitaker contends, limited to claims arising by reason of occupancy. In fact, if we were to so treat it, it would become mere surplusage since the two paragraphs discussed above fully cover that subject. This clause was obviously intended to have a real effect on the rights and

duties of the parties. A reading of it in its context reveals that the only effect it can have is to protect Tidewater against any suit for damages which might arise during the term of the lease. No other interpretation of that clause is possible.

That intent is even more manifest when we consider the factual situation giving rise to this lease. Whitaker owned the wool. It also had possession of the warehouse. Wishing to avoid immediate payment of the duty it leased the warehouse to Tidewater for one dollar and at the same time entered into a warehouse agreement whereby Whitaker supplied all of the labor but such labor was under control of Tidewater while working in the warehouse. Tidewater maintained only one part-time employe on the premises and he was also in the general employ of Whitaker. In other words, both property and the labor were actually Whitaker's and Tidewater was brought in solely for the purpose of meeting the government requirements. Tidewater had no right to select the men to do the work under the agreement. Its only right was to control the men while performing the work. Under such circumstances it is both logical and practical that Tidewater should insist on protection against the negligence of those employes who had been selected for it by Whitaker. It is for that reason that the broad all-inclusive indemnity clause was incorporated into the lease.

When judgment was obtained against Tidewater in the trespass action as a result of the negligence of one of these employes, Tidewater properly demanded indemnification by Whitaker. This Tidewater is entitled to have under the express terms of the agreement.

Judgment affirmed.