588 A.2d 1

Gary RUZZI and Sharon Ruzzi, his wife,

v.

BUTLER PETROLEUM COMPANY, Appellant,

v.

George SHOCKEY and Edmund Zinsser. (Two Cases)

BUTLER PETROLEUM COMPANY, Appellant,

v.

Edmund J. ZINSSER, III and Janice P. Zinsser, his wife, and Zincon, Inc., d/b/a/ Zinsser Service.

Gary RUZZI and Sharon Ruzzi, his wife,

v.

Edmund J. ZINSSER, III and Janice Zinsser, his wife, Zincon, Inc., George Shockey, and Brenda Shockey, t/d/b/a Shockey Excavating. (Two Cases)

Appeal of BUTLER PETROLEUM COMPANY.

Gary RUZZI and Sharon Ruzzi, his wife,

v.

BUTLER PETROLEUM COMPANY

v.

George SHOCKEY and Edmund Zinsser. (Two Cases)

Appeal of George SHOCKEY and George Shockey and Brenda Shockey, t/d/b/a Shockey Excavating. (Four Cases)

1

**BUTLER PETROLEUM COMPANY**

v.

**Edmund J. ZINSSER, III and Janice P. Zinsser, his wife, and Zincon, Inc., d/b/a Zinsser Service.**

Supreme Court of Pennsylvania.

Argued Sept. 24, 1990.

Decided March 15, 1991.

James B. Cole, Stokes, Lurie & Cole, Pittsburgh, for Gary & Sharon Ruzzi.

George M. Weis, Weis & Weis, Pittsburgh, for Edmund Zinsser.

Arthur J. Murphy, Jr., Murphy, Taylor & Adams, Pittsburgh, for George Shockey, et al.

Louis C. Long, Meyer, Darragh, Buckler, Bebenek, Eck & Hall, Pittsburgh, for Butler Petroleum Co.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.*

In March of 1984 Edmund and Janice Zinsser entered into an agreement with Butler Petroleum Company which provided that Butler Petroleum would refurbish Zinsser's gasoline station, fitting it, among other things, with gasoline tanks, appropriate plumbing and pumps for the tanks, a Texaco credit card imprinter, a Texaco sign, and a complete exterior painting scheme following the Texaco pattern. In return, the Zinssers would purchase petroleum products from Butler Petroleum for a certain length of time. Additionally, the agreement contained an indemnity clause which provided:

[The Zinssers] ... exonerate, discharge, and agree to protect and save harmless and indemnify [Butler Petroleum] ... from any and all liability for claims for loss, damage, injury or other casualty to persons or property ... caused or occasioned by any leakage, fire, explosion or other casualty occurring through any imperfection in, injury or damage to, or by reason of the installation, use, operation and/or repair of the said equipment or of the premises.

In keeping with its obligation under the agreement Butler Petroleum called AMG Sign Company to erect a new sign. On March 29, 1984 Gary Ruzzi, who worked for AMG, appeared at the Zinsser's station to remove the old sign and install a new one.

Butler Petroleum had also arranged with George Shockey for the purchase and transportation of four used fiberglass gasoline tanks, three of which were to be installed below ground at Zinsser's station, but which at the time Ruzzi arrived, were sitting on the ground near the sign. Unknown to Ruzzi, one of the tanks had a hole in the top and contained 50 to 100 gallons of gasoline.

Neither Ruzzi nor Zinsser, who was also present, saw the hole or realized that the tank contained gasoline. Ruzzi

* Reassigned to the writer.

was injured when a torch he was using to cut rusted bolts from the existing sign ignited fumes escaping from the fiberglass tank, causing an explosion and fire and knocking Ruzzi from his ladder.

Thereafter, Gary and Sharon Ruzzi filed suit against Butler Petroleum Company in the Court of Common Pleas of Allegheny County, seeking damages for personal injuries Mr. Ruzzi received because of the explosion. Butler Petroleum, in turn, filed a complaint joining George Shockey and Edmund Zinsser as additional defendants. The Ruzzis subsequently filed their own complaint against Edmund and Janice Zinsser, Zincon (a corporation owned by the Zinssers), and George and Brenda Shockey d/b/a Shockey Excavating Co. A third action, filed by Butler Petroleum against the Zinssers, was based on the indemnification agreement. These actions were consolidated for trial.

The jury returned a verdict in favor of the Ruzzis and against Butler Petroleum and Shockey in the amount of $321,000.00, assigning 84% of the negligence to Butler Petroleum and 16% to Shockey. The trial court also awarded delay damages of $67,981.85 and the verdict was molded to include delay damages for a total award of $388,981.85.

Post-trial motions were filed by Butler Petroleum and Shockey and were denied. Judgments were entered on the verdict and in favor of the Ruzzis, the Zinssers and Zincon. Butler Petroleum and Shockey filed timely appeals from these judgments. Superior Court affirmed but remanded for a hearing on the question of pre-judgment delay. 385 Pa.Super. 664, 555 A.2d 254.[1] Butler Petroleum and George Shockey filed cross-petitions for allowance of appeal and this court granted allocatur on both petitions. The issue raised in Butler Petroleum's appeal is whether the indemnity clause in the Butler Petroleum–Zinsser agreement is legally binding and, in Shockey's appeal, whether the trial court erred in admitting the testimony of an expert witness.

1. The trial court has again imposed delay damages. Appeals of this ruling are pending before Superior Court at Nos. 385, 386, 387, 388, 389 and 390 Pittsburgh, 1989, and is not before us.

Butler Petroleum claims that the indemnity clause was enforceable as a matter of law. The trial court disagreed, relying on our decision in *Perry v. Payne,* 217 Pa. 252, 66 A. 553 (1907). Superior Court affirmed the trial court on the grounds that Butler Petroleum was found to be 84% negligent, and was, therefore, not entitled to indemnity, citing *DiPietro v. City of Philadelphia,* 344 Pa.Superior Ct. 191, 496 A.2d 407 (1985).[2]

■ The law has been well settled in this Commonwealth for 87 years that if parties intend to include within the scope of their indemnity agreement a provision that covers losses due to the indemnitee's own negligence, they must do so in clear and unequivocal language. No inference from words of general import can establish such indemnification. *Perry v. Payne,* 217 Pa. 252, 66 A. 553 (1907). See also, *Pittsburgh Steel Co. v. Patterson–Emerson–Comstock, Inc.,* 404 Pa. 53, 171 A.2d 185 (1961); *Tidewater Field Warehouses, Inc. v. Fred Whitaker Co.,* 370 Pa. 538, 88 A.2d 796 (1952); *Darrow v. Keystone 5, 10, 25, $1.00 Stores, Inc.,* 365 Pa. 123, 74 A.2d 176 (1950); *Schroeder v. Gulf Refining Co. (No. 2),* 300 Pa. 405, 150 A. 665 (1930).

In *Perry v. Payne, supra,* Payne and Company were hired to construct a building for Perry. Payne agreed to indemnify Perry:

... from all loss, cost or expense ... arising from accidents to mechanics or laborers employed in the construction of said work, or to persons passing where the work is being constructed ...

Additionally, Payne agreed to:

... protect and keep harmless the said Edward Perry of and from all loss, costs and damages, for non-fulfillment

2. In *DiPietro,* the Superior Court concluded: "Under Pennsylvania law, indemnity is disallowed if the indemnitee is actively negligent." 344 Pa.Super. at 195, 496 A.2d 407. That court's ultimate authority for this proposition is *Pittsburgh Steel v. Patterson–Emerson–Comstock,* 404 Pa. 53, 171 A.2d 185 (1961), which in turn relied heavily on *Perry v. Payne,* 217 Pa. 252, 66 A. 553 (1907). Because the rule announced in *Perry* is dispositive of the issues raised by the parties, we feel no further need to discuss the Superior Court's reasoning on this issue.

of same, or by reason of any liens, claims or demands for material for labor furnished for the construction of said work, or from damages arising from accidents to persons employed in the construction of, or passing near the said work, or for damages done to adjacent properties by reason of the construction of said work, or by depositing material in such a manner as to damage either the city or the individual.

Perry's employee negligently lowered an elevator and crushed to death one of Payne's employees, who was painting the bottom of the elevator shaft. The estate of the employee recovered a judgment against Perry who then sought indemnification from Payne based on their agreement. We ruled that "a contract of indemnity against personal injuries should not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed in unequivocal terms. The liability on such indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation. No inference from words of general import can establish it." *Perry*, at page 262, 66 A. 553.

The indemnification clause included in the agreement between the Zinssers, as indemnitors, and Butler Petroleum, as indemnitee, provided in pertinent part:

[The Zinssers] ... exonerate, discharge, and agree to protect and save harmless and indemnify [Butler Petroleum] ... from any and all liability for claims for loss, damage, injury or other casualty to persons or property ... caused or occasioned by any leakage, fire, explosion or other casualty occurring through any imperfection in, injury or damage to, or by reason of the installation, use, operation and/or repair of the said equipment or of the premises.

Because *Perry* was the law in this jurisdiction when Butler Petroleum and the Zinssers entered into their indem-

nification agreement we must assume that they knew that the law would not recognize as effective their agreement concerning the *negligent* acts of the indemnitee (Butler Petroleum) unless an express stipulation concerning negligence was included in the document. This rule of contract interpretation like the law applicable to any contract is a part of this agreement as if expressly incorporated in its terms. *De Paul v. Kauffman,* 441 Pa. 386, 272 A.2d 500 (1971); *Northwestern National Bank v. Commonwealth,* 345 Pa. 192, 27 A.2d 20 (1942).

We must assume that the parties knew that the law gives to the words used herein a specific meaning and that the words, therefore, must be interpreted in their legal sense. We must also assume that the parties wrote this agreement in conformity to these well established rules of contract construction. That being the case, we conclude that the only intent that can be gleaned from this document is that the parties did not intend to indemnify for acts of the indemnitee's negligence, since words of general import are used. We can discern no reason to abandon the *Perry* rule of contract interpretation which is still a valuable rule of construction, rooted in reason and authority and reject Butler Petroleum's contrary arguments.

With respect to the Shockey appeal, the question is whether an expert witness was erroneously permitted to testify as to Ruzzi's loss of earning capacity. In particular, Shockey raises the issues of whether the witness who testified with respect to Ruzzi's loss of earning capacity had a reasonable pretense of expertise in this area; whether earning capacity should have been determined by the jury without the aid of expert testimony; whether the expert testimony in question was speculative, lacking in foundation, and contrary to the evidence; and whether the expert testimony went beyond the scope of the witness's pretrial report.

In reviewing the various pertinent cases of our Court, the Superior Court has properly summarized the law of expert witnesses in *Erschen v. Pa. Independent Oil Co.,*

259 Pa.Superior Ct. 474, 477, 393 A.2d 924, 926 (1978) as follows:

In general, it is for the trial judge to determine whether a particular witness qualifies as an expert[,] *Griffith v. Clearfield Truck Rentals, Inc.*, 427 Pa. 30, 233 A.2d 896 (1967), and his decision on this matter will be reversed only for a clear abuse of discretion. *Houston v. Canon Bowl, Inc.*, 443 Pa. 383, 278 A.2d 908 (1971)....

An expert witness has been defined as a person who possesses knowledge not within the ordinary reach and who, because of this knowledge is specially qualified to speak upon a particular subject. *Steele v. Shepperd*, 411 Pa. 481, 192 A.2d 397 (1963).... It is not necessary that the witness possess all the knowledge in his special field of activity.... However, the witness must have a reasonable pretension to specialized knowledge on the subject under investigation. *Kuisis v. Baldwin–Lima–Hamilton Corp.*, 457 Pa. 321, 319 A.2d 914 (1974)....

█ Jarrell's qualifications as an expert in this matter were that he was the managing partner of an employment agency in Pittsburgh where he had worked for 32 years, that this agency operates nationwide, that he had experience in determining the employability and earning capacity of injured persons, that he was active or formerly active in a number of business organizations, and that he taught a graduate course in recruitment and selection at LaRoche College. As part of his responsibilities at the employment agency, he periodically reviewed a number of publications having to do with statistics on incomes within various industries and for various occupations throughout the United States.

At trial, Jarrell testified that Ruzzi's earning capacity was diminished by 17%, based on studies he had read concerning the earning capacities of injured employees, and that persons with physical limitations had twice the unemployment rate of those who are not injured. Jarrell had a reasonable pretension of expertise as to the degree of impairment of Ruzzi's earning capacity in that he had 32 years of experience placing employees in jobs, including

injured employees, and in that, as part of his work, he regularly reviewed studies on employment trends, including trends in job placement for injured persons. Shockey's first assertion of error, therefore, is rejected.

The second issue, whether earning capacity should have been determined by the jury without the aid of expert testimony, is subsumed in the first. Since Jarrell had a reasonable pretension of expertise in the subject under consideration, i.e., the degree of impairment of Ruzzi's earning capacity, by definition, he had knowledge relevant to the matter under investigation that was not within the ordinary reach. Since this knowledge was relevant to the issues at trial, and since the jury would not have been aware of this knowledge absent Jarrell's testimony, it was not error to permit the introduction of this expert testimony.

Next Shockey claims that Jarrell's testimony was speculative, lacking in foundation and contrary to the evidence.

The first assertion, that Jarrell's testimony was speculative, is based on the idea that because Jarrell used general terms such as "unemployed handicapped" to describe the class to which Ruzzi belonged, and because he failed to explain Ruzzi's physical capabilities and limitations in relation to potential jobs or vocations, his testimony was speculative. The speculation, presumably, is whether Ruzzi is in fact a member of the class to which Jarrell referred and whether Ruzzi was limited at all with respect to his economic horizons.

As Ruzzi points out, it was not speculative for Jarrell to rely on the testimony of Dr. Flit, Ruzzi's medical expert, which established that Ruzzi suffered from a permanent back injury and that he was limited to jobs requiring light exertion. Neither is Ruzzi's work history both before and after the injury speculative. Ruzzi, a high school graduate, worked in the sign business installing signs his entire working life, and he lost considerable time from work following the accident. It is clear that the doctor's testimo-

ny and the work history, including Ruzzi's educational background, establish that Ruzzi's economic horizons were limited. He could not pursue his former job and his work history suggested no obvious alternatives. It is perhaps less clear that the government studies cited by Jarrell were applicable to Ruzzi's case, since the jury was not told how the injuries of those in the studies compared to Ruzzi's injuries, but this goes to the weight of the evidence, not its admissibility. If defense counsel wished to challenge the application of these studies to Ruzzi's case, cross-examination and closing argument were available for that purpose.[3] We conclude, therefore, that Jarrell's testimony was not speculative.

■ Next, Shockey claims that Jarrell's testimony was lacking in foundation. This assertion is without merit. As we have seen, Jarrell had examined Ruzzi's work history and earnings, had viewed the testimony of Dr. Flit, and had interviewed Ruzzi. When Jarrell took the stand, all of the evidence in the case suggested that Ruzzi had a permanent back injury. The foundation for his testimony was adequate.

■ Shockey also claims that Jarrell's testimony was contrary to the evidence. The basis of this claim is that at the time of trial Ruzzi was employed by AMG Sign Company at a less physically demanding job, but at the same salary he made before the injury. The error in this claim is that it ignores the difference between actual loss of earnings and loss of earning capacity. This court discussed the difference between these concepts as follows:

The defendants contend that there was no evidence of impairment of earning power and that the fact that Bochar's wages were higher after the accident than before proves no deterioration of earning ability. A tort-feasor is not entitled to a reduction in his financial responsibility because, through fortuitous circumstances or unusual application on the part of the injured person,

---

3. The entire cross-examination of Jarrell by two lawyers is contained in three pages of testimony.

the wages of the injured person following the accident are as high or even higher than they were prior to the accident. Parity of wages may show lack of impairment of earning power if it confirms other physical data that the injured person has completely recovered from his injuries. Standing alone, however, parity of wages is inconclusive. The office worker, who loses a leg has obviously had his earning ability impaired even though he can still sit at a desk and punch a comptometer as vigorously as before. It is not the status of the immediate present which determines capacity for remunerative employment. Where permanent injury is involved, the whole span of life must be considered. Has the economic horizon of the disabled person been shortened because of the injuries sustained as the result of the tortfeasor's negligence? That is the test.

*Bochar v. J.B. Martin Motors, Inc.,* 374 Pa. 240, 244, 97 A.2d 813, 815 (1953). (Footnotes omitted.) Shockey's claim is without merit, for the fact of Ruzzi's current employment at the same salary as before the injury does not, as this court explained in *Bochar,* negate his claim for a diminished earning capacity. Earning capacity has to do with the injured person's economic horizons, not his actual earnings, and the fact that Ruzzi was fortunate enough to earn as much as he had formerly earned, but at a new and less physically demanding job, does not establish that a loss of earning capacity, on these facts, is contrary to the evidence.

Finally, Shockey contends that the expert testimony was inadmissible because it went beyond the scope of Jarrell's pretrial report. In particular, Shockey claims that although the pretrial report addresses future wage loss, it does not address diminished earning capacity, and thus, does not place Shockey on notice that the expert would testify as to diminished earning capacity. We disagree with Shockey's characterization of Jarrell's pre-trial report furnished to Shockey pursuant to pertinent discovery rules.

As stated earlier in *Bochar v. J.B. Martin Motors, Inc.,* lost earning capacity involves the question, "Has the economic horizon of the disabled person been shortened be-

14

cause of the injuries sustained as a result of the tort-feasor's negligence?"

Jarrell's report states that, based on his understanding of Dr. Flit's testimony, Ruzzi was permanently injured and would never again be able to perform work of the type he had performed before the accident. Instead, he would be limited to light duty work where he could frequently change positions and not lift over twenty pounds. Jarrell also stated, in the last paragraph of his report:

It [future earnings loss] is based on AMG Sign Company's continuing willingness to provide Mr. Ruzzi with employment on an "as able to work, as light duty work is available" basis. Should that willingness cease or should AMG Sign Company go out of business, Mr. Ruzzi would have to re-enter the open labor market where he would face the well known difficulties of the unemployed handicapped. Their unemployment rate is typically twice that of the non-handicapped, and their average earnings are 54%–82% of those of the non-handicapped (Employer Attitudes Towards Hiring Persons With Disabilities, Human Resources Center publication, 1978).

At trial, Jarrell testified that "countless studies done on the earnings of an impaired handicap [sic] versus the earnings of a nonimpaired, nonhandicapped" person indicate that the handicapped person suffers a loss of 17% earning capacity.

Since lost earning capacity is the limitation of economic horizons, and since Jarrell's report describes not only the nature of Ruzzi's injuries, but also, in Jarrell's opinion, what would happen to Ruzzi were he forced to compete on an open job market, including a prediction that he would be able to earn no more than 82% of his former salary (an 18% loss of earning capacity), the testimony was within the scope of the report and it was not error to admit Jarrell's expert testimony.

The order of Superior Court is affirmed.

NIX, C.J., did not participate in the decision of this matter.

ZAPPALA, J., did not participate in the consideration or decision of this matter.

LARSEN, J., files a concurring opinion.

FLAHERTY, J., files a dissenting opinion.

LARSEN, Justice, concurring.

I join in the result of the majority, and I agree with the majority's disposition of the issue involving the expert witness' testimony. I, however, disagree with the majority's rationale regarding the indemnification issue and, in support thereof, adopt the Superior Court Memorandum opinion (Cavanaugh, Tamilia, and Hoffman, JJ.) which is attached hereto.

### APPENDIX

Gary Ruzzi and Sharon Ruzzi, his Wife

v.

Butler Petroleum Company, Appellant

v.

George Shockey and Edmund Zinsser

No. 00139 Pittsburgh, 1988

Appeal from the Judgment entered in the Court of Common Pleas of Butler County, Civil Division, No. C.P. 87–1685 Book 191, Page 343

Gary Ruzzi and Sharon Ruzzi, his Wife

v.

Butler Petroleum Company,

v.

George Shockey and Edmund Zinsser

Appeal of: George Shockey

No. 00169 Pittsburgh, 1988

Appeal from the Judgment entered in the Court of Common Pleas of Butler County, Civil Division, No. C.P. 87–1685 Book 191, Page 343

Before: CAVANAUGH, TAMILIA, and HOFFMAN, JJ.

MEMORANDUM:

Filed: November 9, 1988

This action in trespass resulted from the consolidation of three cases in the trial court. The cases were tried in Allegheny County with judgment then transferred to Butler County. The facts are not in dispute. Additional defendant-appellee Zinsser was in the process of opening a new gas station on property he had leased and had entered into an agreement for renovations with defendant-appellant, Butler Petroleum Company ("Butler"). Butler was to provide fuel tanks, pumps, a new sign and was to make other exterior renovations and repairs in exchange for the Zinssers' promise to purchase oil and gas from Butler for a specified period of time.

As part of the renovations, Butler arranged for additional defendant-appellant Shockey to pick up and deliver two used fuel tanks to the Zinssers' gas station. Butler also arranged for the installation of the new sign by AMG Sign Company, plaintiff-appellee Ruzzi's employer.

Upon delivering the 8,000 gallon tanks to Zinssers' station, Shockey noticed one tank had a four to six inch hole on the top. He notified Butler's general manager, stating repairs would have to be made and the tank drained of fuel before installation.

When Ruzzi and a co-worker arrived to install the new sign, the tanks were sitting a few feet away from the sign post where Ruzzi had to work and unknown to him, they contained 50 to 100 gallons of gasoline. Ruzzi noticed the tanks but did not see the hole or smell gasoline. As he was working above the tanks installing the new sign, he had difficulty removing the old sign and found it necessary to use a acetylene torch. The heat of the torch, a spark or a piece of hot metal caused the fumes coming from the defective tank to ignite, triggering an explosion and knocking Ruzzi from the ladder on which he was standing. He sustained injuries to his back and other parts of his body.

Ruzzi and his wife sued for the personal injuries he suffered and after a jury trial a molded verdict was entered

in favor of Ruzzis as against Butler and Shockey (Butler was found to be 84 per cent negligent and Shockey was found to be 16 per cent negligent) and exonerating the Zinssers. The trial court also awarded delay damages against Butler and Shockey. Post-trial motions were denied and judgment was entered in favor of the Ruzzis and against Butler and the Shockeys and in favor of the Zinssers as against all parties. These timely appeals followed the entry of judgment.

Butler first charges as error the failure of the trial court to permit Butler to pursue its action for indemnity from the Zinssers. The indemnification clause included in the agreement between the parties stated as follows:

[The Zinssers] ... exonerate, discharge, and agree to protect and save harmless and indemnify [Butler Petroleum] ... from any and all liability for claims for loss, damage, injury or other casualty to persons or property ... caused or occasioned by any leakage, fire, explosion or other casualty occurring through any imperfection in, injury or damage to, or by reason of the installation, use, operation and/or repair of the said equipment or of the premises.

Butler argues this clause was enforceable as a matter of law and should have been upheld by the trial court regardless of Butler's own negligence since the language of the clause clearly provides for this result. In the alternative, it contends the issue of whether or not the indemnity clause was enforceable should have been submitted to the jury.

We disagree with Butler's contentions. "Under Pennsylvania law, indemnity is disallowed if the indemnitee is actively negligent." *DiPietro v. City of Philadelphia,* 344 Pa.Super. 191, 496 A.2d 407 (1985). The jury found Butler was 84 per cent negligent which means it is not entitled to indemnity regardless of whether the language of the clause provides for such a result. Further, we find no error on the part of the trial court in not submitting the indemnification issue to the jury. "It is the role of the court to decide

whether, as a matter of law, written contract terms are clear or ambiguous." *Vogel v. Berkley,* 354 Pa.Super. 291, 511 A.2d 878 (1986). "The task of interpreting a contract is generally performed by a court rather than a jury." *Standard Venetian Blind Co. v. American Empire Insurance,* 503 Pa. 300, 469 A.2d 563 (1983). The court determined the indemnification clause was not clear and did not entitle Butler to be indemnified against its own negligence. Although we are not bound by the trial court's conclusions of law, *2401 Penn Avenue Corp. v. Federation of Jewish Agencies of Philadelphia,* 507 Pa. 166, 489 A.2d 733 (1985), we nonetheless agree with the trial court in its determination of this issue.

The next argument of Butler, which is also raised by Shockey, is the court erred in admitting the testimony of Mr. Jarrell as an expert for the Ruzzis since he was not qualified, his opinions were not supported by the facts and were beyond the scope of his report. Jarrell was called to testify regarding Mr. Ruzzi's loss of earning capacity. As correctly noted by the Ruzzis, the testimony of an expert is not necessary for the determination of lost earning capacity. *Mecca v. Lukasik,* 366 Pa.Super. 149, 530 A.2d 1334 (1987).

"The Pennsylvania standard of qualification for an expert witness is a liberal one. 'If a witness has any reasonable pretension to specialized knowledge on the subject under investigation he may testify, and the weight to be given to his evidence is for the jury.' *Kuisis v. Baldwin–Lima Hamilton Corp.,* 457 Pa. 321, 338, 319 A.2d 914, 924 (1974)." *Rutter v. Northeastern Beaver County School District,* 496 Pa. 590, 597–8, 437 A.2d 1198, 1201 (1981) (plurality opinion).

. . . .

Although the witness must demonstrate some special knowledge or skill, there is no requirement that a witness acquire that knowledge as a result of formal schooling;

expertise acquired by experience is expertise nonetheless. (Citations omitted.)

*McDaniel v. Merck, Sharp & Dohme,* 367 Pa.Super. 600, 608, 533 A.2d 436, 440 (1987).

Moreover, it is within the trial court's discretion to determine whether a witness is qualified to testify as an expert. *Beary v. Container General Corp.,* 368 Pa.Super. 61, 533 A.2d 716 (1987). The trial court found Jarrell's background and experience was sufficient to allow his testimony regarding loss of earning capacity. We find this was not an abuse of the court's discretion.

Additionally, Butler and Shockey argue Mr. Jarrell's testimony that Ruzzi suffered a diminished earning capacity of 17 per cent lacked an adequate foundation, was speculative and should not have been admitted.

The trial court found the testimony of Mr. Jarrell was not speculative but was based upon his experience and the evidence submitted by the physician regarding Ruzzi's physical limitations. Again, an expert is not only someone with educational qualifications but can be a person with a vast amount of experience in a certain field.

When a witness is offered as an expert, the first question the trial court should ask is whether the subject on which the witness will express an opinion is so distinctively related to some science, business or occupation as to be beyond the knowledge of the average layman and if answered in the affirmative, the next question the court should ask is whether the witness has sufficient skill, knowledge or expertise in that field as to make it appear that his opinion will probably aid the trier in his search for truth.

*Beary, supra,* 368 Pa.Superior Ct. at 74, 533 A.2d at 722 (quoting *Dambacher by Dambacher v. Mallis,* 336 Pa.Super. 22, 35, 485 A.2d 408, 415 (1984), appeal dismissed 508 Pa. 643, 500 A.2d 428).

We agree with the trial court that Jarrell has sufficient expertise in the field of job placement and is knowledgeable

of the relevant statistics that his testimony would aid the jury.

In conjunction with the above argument, Butler and Shockey claim this testimony was precluded because it went beyond the pre-trial expert report which is prohibited by Allegheny County Local Rule 212. After reviewing the pre-trial report, we find Mr. Jarrell's testimony consisted of a reasonable explanation of his report which contained language dealing directly with Ruzzi's diminished earning capacity, therefore it was properly admitted.

Butler's third claim is the verdict is against the weight of the evidence because it was shown that Ruzzi was contributorily or comparatively negligent. Butler states Ruzzi's own testimony reveals he was aware of the danger of operating a torch near gasoline tanks and he continued to operate the torch even though he was having difficulty in doing so.

The trial court found Ruzzi, as a business invitee, was not obligated to inspect the premises for hidden dangers and was not contributorily negligent since he did not see the hole in the one tank nor did he smell gasoline; in fact, Ruzzi testified the tanks appeared to be new and when he passed by them he slapped one and it sounded hollow (N.T. 5/6/87, p. 16). His co-worker and Zinsser corroborated this testimony. We find Butler has not met the standard necessary for granting a new trial, i.e. the verdict is so contrary to the evidence that it shocks one's sense of justice. *S.N.T. Industries, Inc. v. Geanopulos,* 363 Pa.Super. 97, 525 A.2d 736 (1987). We believe the jury had ample evidence to find Ruzzi was not negligent.

Finally, Butler and Shockey both argue delay damages should not have been awarded without an evidentiary hearing and the grant of delay damages was made because the court overlooked the fact that no party was at fault for the delay which would have supported a denial of the request for such damages.

The trial court found in awarding delay damages it had followed the factors that were suggested in *Craig v. Magee Memorial Rehabilitation Center*, 512 Pa. 60, 515 A.2d 1350 (1986), noting that nothing in the record or in the answer to the petition for damages revealed the Ruzzis were responsible for the delay.

This Court has recently addressed this issue in *Ceresini v. Valley View Trailer Park, Ephrata, Inc.*, 380 Pa.Super. 416, 552 A.2d 258 (1988), finding *Craig* does not support the notion that defendants should be assessed delay damages for any delay *not* the fault of plaintiffs. Defendants should be assessed delay damages only when the court finds they are at "fault" which includes deliberate delay for the sake of profit. We are unable to determine, however, whether appellants are at fault for any delay because the trial court did not hold a hearing. We remand for the court to hold hearings to determine whether any prejudgment delay is attributable to appellants and for entry of judgment in accordance with those findings and this Memorandum, in light of *Ceresini*.

Shockey claims the trial court erred in denying his motion for a nonsuit since the record does not support a finding that he owed a duty of care to Ruzzi and without this duty an action for negligence cannot be sustained. Because Butler only requested he transport the tanks to the site, Shockey believes the care, custody and control of the tanks had passed to Butler and Zinsser. He also argues the risk of harm was not foreseeable so as to warrant the imposition of any duty on his part.

The trial court stated there was no merit in Shockey's motion for a compulsory nonsuit finding sufficient evidence that Shockey was contributorily negligent. We agree with the trial court. Shockey delivered the tanks to the gas station where he knew major renovation work would be taking place. He knew the tanks were not empty and that one had a four to six inch hole in the top. Given the explosive propensity of gasoline and the extreme caution

required when working around it, we find it was foreseeable an injury could occur under the circumstances. Shockey owed a duty to workers on the premises to notify them or Zinsser about the danger, especially when the tanks appeared to be new and others on the property had no reason to suspect there was gasoline inside. Although Shockey notified Butler, he breached his duty by not notifying those individuals in immediate proximity of the hazard.

Next, Shockey alleges error due to the denial of his requests for charge stating the court should have instructed the jury as to the standard of care required of Butler, Shockey and Ruzzi under the circumstances that were presented at trial. This issue has been waived, however, as it was not raised in his statement of questions. *Rago v. Nace*, 313 Pa.Super. 575, 460 A.2d 337 (1983).[1]

The Zinssers present one final argument. Because there are issues being raised in this appeal that do not directly concern them, they assert they should not be subjected to a new trial if that is the relief granted by this Court. *Stokan v. Turnbull*, 480 Pa. 71, 389 A.2d 90 (1978). Due to our disposition of the issues above, we need not address this contention.

Judgments affirmed except as to delay damages. The case is remanded for a hearing to determine whether any prejudgment delay is attributable to appellants and for entry of judgment in accordance with those findings.

Jurisdiction relinquished.

FLAHERTY, Justice, dissenting.

While I agree with the majority's treatment of the *Shockey* case and join in that part of the opinion, I vigorously dissent from the majority's treatment of the *Zinsser* case. The majority in *Zinsser* holds that plain language in an indemnification agreement which saves harmless and in-

---

**1.** Shockey raises one other issue in his Statement of Questions which was not argued in the brief, therefore, it is waived. *Brown v. Delaware Valley Transplant Program,* 372 Pa.Super. 629, 539 A.2d 1372 (1988).

demnifies does not operate to do what it says, i.e., it does not indemnify against the indemnitee's *negligence*, because it does not contain words of "express stipulation" (referring to negligence). The authority for this somewhat astounding proposition is *Perry v. Payne*, 217 Pa. 252, 66 A. 553 (1907). Because I believe that whatever vitality the *Perry* case may have had in 1907 has been lost to the modern world, I dissent.

In *Perry*, this court held that if the parties to an indemnity contract expressed a clear and unequivocal intent that the contract indemnify against the negligence of the indemnitee, that agreement would be enforced, but if that intent were not clear, i.e., if the contract did not specifically state that the indemnitee would be held harmless and indemnified for his own negligence, the court would look to the surrounding circumstances and the parties' object in entering into the contract. The court required either an express provision indemnifying the indemnitee for its own negligence or unusual circumstances leading to that result because:

A single act of negligence on the part of the owner or his employees, over whom the contractors would have no restraint or control whatever, might create a liability which a lifetime of successful business could not repay. An interpretation ... which might give rise to such results could hardly be regarded as reasonable or as giving effect to the intention of the parties.

217 Pa. at 259, 66 A. at 555.

The *Perry* court justified this somewhat paternalistic view by stating that it was giving effect to the intent of the parties:

In construing the instrument, it is our duty to ascertain the intention of the parties, and in doing so we are not confined to the language used, but may consider the circumstances surrounding the parties and their object in making the instrument.

217 Pa. at 257, 66 A. at 555. As our law of contract has evolved generally, modern courts are more willing to give

effect to the unambiguous language of agreements than the
*Perry* court was in 1907. In *Gene and Harvey Builders v.
Pa. Manufacturers' Ass'n.*, 512 Pa. 420, 517 A.2d 910
(1986), we stated that in contract interpretation:

> the goal is to determine the intent of the parties, and in
> the absence of ambiguity, the plain meaning of the agree-
> ment will be enforced.

512 Pa. at 426, 517 A.2d at 913.

This point had been strongly affirmed just four years
earlier in *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659
(1982), where we stated:

> It is well established that the intent of the parties to a
> written contract is to be regarded as being embodied in
> the writing itself, and when the words are clear and
> unambiguous the intent is to be discovered only from the
> express language of the agreement. . . ." [W]hen a writ-
> ten contract is clear and unequivocal, its meaning must be
> determined by its contents alone. It speaks for itself and
> a meaning cannot be given to it other than that ex-
> pressed. Where the intention of the parties is clear, there
> is no need to resort to extrinsic aids or evidence." Hence,
> where language is clear and unambiguous, the focus of
> interpretation is upon the terms of the agreement as
> *manifestly expressed,* rather than as, perhaps, silently
> intended.

498 Pa. at 48–49, 444 A.2d at 661. (Emphasis in original.)
In sum, Pennsylvania's present law of contract, exemplified
by cases such as *Steuart v. McChesney* and *Gene and
Harvey Builders,* clearly requires that courts give legal
effect to the plain meaning of what is written in contracts.

In the present case, the indemnity provision of the agree-
ment provided that the Zinssers would "exonerate, dis-
charge and . . . protect and save harmless and indemnify"
Butler Petroleum "from any and all liability for . . . injury
or other casualty to persons or property . . . caused . . . by
. . . fire, explosion . . . occurring through any imperfection
in . . . or by reason of the installation, use, operation and/or
repair of the said equipment or of the premises." The

personal injury which is the subject of suit in this case was caused by fire and explosion which occurred as a result of repair to the premises and/or installation of equipment. There is no ambiguity in the language of the contract—it provides that the Zinssers will indemnify Butler Petroleum for the type of accident which occurred—and, thus, the indemnity clause should be enforced. As we have stated countless times, it is not the proper function of this court to rewrite contracts for the parties or to substitute our commercial judgment for theirs. Rather, our function is to enforce the unambiguous meaning of contracts which the parties have voluntarily executed. If the contractual obligation is clear, freely entered into, and for a legal purpose, we will not intervene to rewrite the parties' contract.

Because the contract provides that Butler Petroleum is to be indemnified for the type of accident that occurred in this case, the case should be remanded to the trial court for entry of a judgment n.o.v. in favor of Butler Petroleum and against Edmund J. Zinsser and Janice P. Zinsser.