629 A.2d 265

**CITY OF PITTSBURGH, Appellant,**

v.

**AMERICAN ASBESTOS CONTROL COMPANY and United Capitol Insurance Company, and Donald Neuberger, Guardian of the Estate of Douglas Neuberger, an incompetent, McDonough Caperton**

v.

**McDONOUGH CAPERTON INSURANCE GROUP, INC.**

Commonwealth Court of Pennsylvania.

Argued June 14, 1993.

Decided July 21, 1993.

236

---

J. Russell McGregor, Jr., Asst. City Sol., for appellant.

James A. Mollica, Jr., for appellee, American Asbestos Control Co.

Nancy DeCarlo Fabi, for appellee, United Capitol Ins. Co.

Before CRAIG, President Judge, and COLINS, J., and LORD, Senior Judge.

LORD, Senior Judge.

The City of Pittsburgh appeals an Allegheny County Common Pleas Court order granting summary judgment in favor of all defendants in the City's declaratory judgment action against them.

American Asbestos had a contract with the City of Pittsburgh (City) for asbestos removal in various city facilities. In the course of removing asbestos, an employee of American Asbestos, Douglas Neuberger, fell through a city-owned garage roof. Neuberger sued the City, alleging that the City's sole negligence caused him to sustain his injuries because the City had allowed the roof to fall into structural disrepair.

After the suit by Neuberger, the City filed this declaratory judgment action in the common pleas court, invoking clauses in its agreement with American Asbestos requiring American Asbestos to indemnify the City and hold it harmless from general liability claims such as Neuberger's. Also, the City alleged that American Asbestos violated another clause in the agreement requiring American Asbestos to provide general liability insurance coverage to cover claims such as Neuberger's. The City named as a defendant United Capitol Insurance Company on the theory that the City was a named insured under a policy United Capitol had issued to American Asbestos.

United Capitol denied ever having been an insurer of the City, or even having been made aware by anyone that the City was to be named as an additional insured on the asbestos abatement project.

American Asbestos joined as an additional defendant McDonough Caperton Insurance Group, alleging negligence and breach of the broker agreement between McDonough Caperton and American Asbestos. American Asbestos claimed that it had procured an insurance certificate naming the City as an additional insured of United Capitol from McDonough Caper-

ton and that any lack of insurance coverage by United Capitol would of necessity be caused by the negligence and breach of contract by McDonough Caperton in failing to process the application to have the City added to American Asbestos' policy.

The City moved for summary judgment against American Asbestos on the ground that there was a duty on the part of American Asbestos to indemnify the City. All defendants moved for summary judgment against the City and the trial court granted the defendants' motions. It is this order which is before the Court for review.

## Indemnity

■ The indemnity provision of the contract between American Asbestos and the City reads

"17. *INDEMNIFICATION.* Contractor agrees to indemnify, save and hold harmless and defend City, its officers and employees, from any and all liens, charges, claims demands, losses, costs including but not limited to legal fees and court costs, causes of action or suits of any kind or nature whatsoever, in law or in equity, judgments, liabilities and damages of any and every kind and nature whatsoever, from any causes whatsoever, whether known or unknown, foreseen or unforeseen, arising by reason of or during the performance of any work of any kind or nature covered by this contract."

The sole ground for the trial court's grant of the motion for summary judgment in favor of American Asbestos is that the above clause contains no specific language by which American Asbestos contracted to indemnify the City and hold the City harmless for the City's negligence.

■ There can be no doubt that the trial court's holding is well-established in the law. In order for one to be indemnified for its own negligence, the contract of indemnity must contain a clause which specifically makes the obligation to indemnify an obligation to indemnify *even though the loss is occasioned by the indemnitee's own negligence.* This principle is clearly

expressed in *Ruzzi v. Butler Petroleum,* 527 Pa. 1, 7, 588 A.2d 1, 4 (1991).

The law has been well settled in this Commonwealth for 87 years that if parties intend to include within the scope of their indemnity agreement a provision that covers losses due to the indemnitee's own negligence, they must do so in clear and unequivocal language. No inference from words of general import can establish such indemnification. *Perry v. Payne,* 217 Pa. 252, 66 A. 553 (1907). See also, *Pittsburgh Steel Co. v. Patterson–Emerson–Comstock, Inc.,* 404 Pa. 53, 171 A.2d 185 (1961); *Tidewater Field Warehouses, Inc. v. Fred Whitaker Co.,* 370 Pa. 538, 88 A.2d 796 (1952); *Darrow v. Keystone 5, 10, 25, $1.00 Stores, Inc.,* 365 Pa. 123, 74 A.2d 176 (1950); *Schroeder v. Gulf Refining Co.* (No. 2), 300 Pa. 405, 150 A. 665 (1930).

While recognizing this firmly established rule of law, the City argues that it is not conclusively bound by it in this instance because, first, there is another clause in the contract which the trial court did not consider; and, second, the Superior Court case of *Urban Redevelopment Authority of Pittsburgh v. Noralco Corporation,* 281 Pa.Superior Ct. 466, 422 A.2d 563 (1980) is compelling authority for the proposition that before it determines this indemnification question, the court need examine the circumstances surrounding the execution of the contract and, in particular, whether the indemnitee's negligence which caused the obligation was "active" or "passive." We shall now address these arguments.

The first argument relates to section 17B of the agreement between American Asbestos and the City, which provides:

*Contractor Liable for Damages. [American Asbestos] further agrees that [it] will ... indemnify* and save harmless *the City of Pittsburgh,* its officers, employees an[d] agents from all suits, actions and proceedings of every kind which may be brought against the City or her officers, employees or agents *for or on account of any injuries* or damages to persons or property, *received or sustained by* any person or persons, firm or corporation by or from *[American Asbestos], or his employees or agents while engaged in the*

*prosecution of the work* under this agreement ... or by or on account of any accident that may occur during the performance of the work ...." (emphasis supplied).

This paragraph of the agreement is certainly very inclusive but, again, it does not contain any express words imparting that the City was to be reimbursed for its own negligence. Despite the inclusiveness of this contract provision, we must conclude that, under these circumstances, *Ruzzi* controls and that the absence of words expressing the parties' intent to indemnify the indemnitee for its own negligence is fatal to the City's claim.

■ Next, we are faced with the proposition urged upon us by the City and supported by the Superior Court case of *Urban Redevelopment Authority v. Noralco*, that we must analyze the type of negligence alleged against the City and determine whether it was "active" or "passive". We certainly respect the Superior Court's decision and its conclusion that where the indemnitee's negligence is "merely" passive, there is no necessity for words that indemnify the indemnitee against his own negligence. However, we are constrained to disagree with this conclusion. In the first place, *Urban Redevelopment* antedates *Ruzzi*, a Supreme Court decision which in no way attempts to make the active-passive distinction (*cf.* concurring opinion in *Urban Redevelopment*). We, therefore, are bound by *Ruzzi*.

Moreover, we cannot, as a practical matter, accept the reasoning that the intent of the parties to a contract of indemnity can in any meaningful way be found by the type of negligence *subsequently* involved in an accident. Any rule which would entertain the active-passive distinction is to us difficult to interpret, unrealistic and unnecessary; and, in any case, we are bound by the rule reaffirmed in *Ruzzi*.[1]

1. For an example of how an indemnitee can protect itself from its own negligence, we refer drafters of these clauses to *Westinghouse Electric Co. v. Murphy, Inc.*, 425 Pa. 166, 228 A.2d 656 (1967). In that case, the contract contained the following clause: *"whether the same results from negligence of Buyer or Buyer's employees or otherwise, it being the intent of this provision to absolve and protect buyer from any and all loss by*

*Duty of American Asbestos to Provide Insurance*

◼ The City's argument on this question is difficult to understand in view of the record before us. Apparently, however, the City argues that the policy provided did not cover it for any liability arising from the Neuberger accident and that, therefore, American Asbestos did not carry out its promise to provide insurance. The difficulty with this argument is that American Asbestos *did* provide an insurance policy in accordance with the terms of the contract. Section 1.05 of the bidder specifications, incorporated into the contract, reads as follows:

*INSURANCE*

Before commencing with the work, Contractor shall file Certificate of Insurance with the City for:

GENERAL LIABILITY ("Claims Made" basis acceptable)

AUTOMOBILE LIABILITY

WORKER'S COMPENSATION AND EMPLOYER'S LIABILITY.

as required by law and described in the General Conditions of the Contract.

This section permitted American Asbestos to provide a certificate of insurance for a claims-made insurance policy and that is what American Asbestos provided on February 22, 1989. Indeed, an authorized city representative testified that American Asbestos complied with that requirement. (Notes of Deposition Testimony, Deposition of Patrick Rodgers, p. 40).

The City discovered, after the accident, however, that it was without benefit of coverage, not because American Asbestos provided no policy, but because no claim was made during the term of the policy. The policy commenced coverage May 1, 1988 and expired June 30, 1989 and additionally covered the City for claims reported within sixty days after June 30, 1989. Despite the fact that the accident was May 23, 1989, no claim

*reason of the premises." Id.* at 169, 228 A.2d at 658 (emphasis in original).

was made until after the period of the policy.[2]  Thus, we see no merit to the City's argument that the court should have extended coverage for the Neuberger accident because somehow American Asbestos breached its agreement to provide insurance.

### Claims Made Portion of the Policy

■  All parties agree that the policy was a claims made policy.  The City admits that no claim was made against it within the policy period.  However, the City argues that a workmens' compensation claim against American Asbestos satisfied the claims made requirement of the policy.  The trial court has adequately answered this argument and we therefore quote its opinion.

> The claim for purposes of this policy is provided in an endorsement which reads as follows:
>
>> As used with respect to Section II, Coverage A of Commercial General Liability Form CL101(2–86), means a demand received by the insured or the company within the provision of Section 1, Coverage A, Paragraph a(b)(1) of Commercial General Liability Form CL101(2–86) for money or services, including the service of suit or institution of arbitration proceedings against the named insured.
>
> It is undisputed that no claim against the
> City of Pittsburgh was made within the policy period.  The City attempts to resist the Motion for Summary Judgment by claiming that Neuberger filed a claim for Workers' Compensation against his employer, American Asbestos, within the claim reporting period of the policy.  Although Neuberger received worker's compensation, the evidence of record does not show any such claim against American Asbestos.  Perhaps it was paid through a claim against the State Worker's compensation coverage on this project.
> Even assuming such a claim was made against American Asbestos within the policy reporting period, it is clear that the claim does not meet the definition of a "claim" within

---

**2.**  See our discussion below on the question of whether a claim was made within the policy period.

the meaning of the policy which the City and American Asbestos agreed was to be in place. The policy definition of claim must be read in context with the insuring agreement which obligates the company to pay "those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies". Inasmuch as this insurance does not apply to Worker's Compensation claims, the claim, if any were brought by Neuberger within the policy reporting period, would not be a claim within the meaning of this insurance policy, which is a general liability policy.

*City of Pittsburgh v. American Asbestos* (No. GD90–11451, filed October 6, 1992), slip op. at 9.

We agree with this analysis and affirm the court's decision.

## ORDER

AND NOW, this 21st day of July, 1993, the order of the Allegheny County Court of Common Pleas, at No. GD–90–11451, dated June 17, 1992, is hereby affirmed.

McGINLEY and PELLEGRINI, JJ., did not participate in the decision in this case.