**Burlington Coat Factory of Pa., LLC v. Grace Construction Management Company, LLC**

8

[REDACTED]

*Heather M. Eichenbaum,* for plaintiffs.
*Thane C.J. Trotman,* for defendant

SNITE, *J.,* July 12, 2013—On June 14, 2013, this court ruled on cross-motions for summary judgment in the above captioned case. By order dated June 14, 2013, this court granted the summary judgment motion of defendant Grace Construction Management Company, LLC, and denied the summary judgment motion of plaintiffs. On July 11, 2013, this court received notice that plaintiffs had filed an appeal to the Superior Court of Pennsylvania from this court's June 14; 2013 order.

## DISCUSSION

This court adopts, as its opinion on appeal, the order and opinion dated April 30, 2013, which sets forth this court's reasoning. This opinion is incorporated herein by reference. This court asks that the June 14, 2013 by affirmed.

## ORDER

And now, this 14th day of June, 2013, upon consideration of the parties' cross-motions for summary judgment, the responses thereto, and all other matters of record, and in accord with the opinion issued simultaneously, it is ordered that plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted.

It is further ordered that judgment is entered in favor of defendant and against plaintiffs on all of plaintiffs' claims in this action.

## OPINION

Plaintiff Burlington Coat Factory Warehouse Corporation is the parent corporation, and plaintiff Burlington Coat Factory of Pennsylvania, LLC is the subsidiary (collectively, the "BCF Entities"), which operates a store in Philadelphia (the "Store"). Defendant Grace Construction Management Company, LLC ("Grace") is a contractor who entered into a contract (the "contract") with "Burlington Coat Factory" to perform renovations to the Store.

Brian Eddis, an employee of one of Grace's sub-sub-contractors, Belfi Brothers, was injured while using the freight elevator at the Store. He and his wife sued the BCF entities and Schindler Elevator Corporation ("Schindler"), which apparently had a contract to service and maintain the freight elevator (the "underlying action").[1] The parties

---

1. According to the allegations of the complaint in the underlying action, "[o]n or about October 1, 2009, Plaintiff, Brian Eddis was transporting material from the loading dock onto the freight elevator using a wheel barrel and as he was preparing to set the wheel barrel down on the floor of the elevator, suddenly and without warning, the elevator doors closed on Plaintiff Brian Eddis striking him on his back and pinning him between the closing doors and the wheel barrel." Complaint, ¶6.

settled the underlying action with the BCF Entities contributing $35,000 and Schindler contributing $35,000. There was no finding of liability in the underlying action.

When the underlying action was filed, the BCF Entities demanded a defense and indemnification from Grace and its insurance company, but their demand was refused. Grace's insurance company asserted that its coverage was not primary. As a result, the BCF Entities brought this action against Grace for breach of contract, contribution and indemnity.[2] The parties have cross-moved for summary judgment, which motions are presently before the court.

The main body of the contract between Grace and "Burlington Coat Factory" provides in relevant part as follows:

### 12. INDEMNIFICATION

To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless BCF, the Architect, the Engineer, the Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting there from, but only to the extent caused in whole or in part by negligent acts

---

2. The BCF Entities also joined Grace as an additional defendant in the underlying action and asserted claims against it for contribution and indemnity. Once Mr. Eddis' claims were settled, those joinder claims were consolidated with the claims in this action.

or omissions of the Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

Exhibit A to the contract between Grace and "Burlington Coat Factory" provides in relevant part as follows:

1. Grace Construction Management Company releases BCF and assumes entire responsibility and liability for any and all claims and/or damages of any nature or character whatsoever arising under the Contract Documents, by operation of law, or in any other manner with respect to work covered by this CONTRACT and agrees to indemnify and save BCF harmless from and against all claims, demands, liabilities, interest, loss, damage, attorneys' fees, costs and expenses of whatsoever kind or nature, whether for property damage, personal injury, or bodily injury (including death) to any and all persons, whether employees of Grace Construction Management Company, BCF or others, or otherwise, caused or occasioned thereby, resulting there from, arising out of or there from, or occurring in connection therewith. Grace Construction Management Company further agrees to indemnify and save BCF harmless from any and all manner of claims, damages, or suits for infringement or violations of one or more copyrights, patents and/or patent rights, including all costs and expenses (including attorneys' fees) which BCF may incur or sustain in connection with the same.

2. Grace Construction Management Company shall procure and maintain, at its own expense, the following

insurance:

* * *

B. General Liability* Bodily Injury/Property Damage

$1,000,000 Combined Single Limit

$2,000,000 General Aggregate

* * *

D. Name BCF and Landlord as additional Insured

*The General Liability coverage shall include BCF as an Additional Insured and include the "Aggregate Limits per Project" endorsement. This $2,000,000 general Aggregate limit shall by endorsement apply to each project of the Grace Construction Management Company and the $2,000,000 Aggregate endorsement shall be fully available under this CONTRACT with Contractors and shall not be depleted by claims arising from any other project, work, job, sale or delivery. The General Liability coverage shall include contractual liability coverage for the liability that Grace Construction Management Company assumes and/or undertakes (for example, indemnification obligations) under this CONTRACT. Contractors shall also procure and maintain such additional types and minimum limits of insurance as the landlord may require of BCF under the Contract documents between the Landlord and BCF and/or as BCF may require of Contractors hereunder. All insurance coverage shall be written with a carrier with a rating of A minus or better per the then-current A.M. Best Company rating. Before commencing work, and before delivering any materials, articles and/or

equipment hereunder, Grace Construction Management Company shall furnish a properly completed Accord Evidence of Insurance addressed to BCF establishing that all the insurance coverage required hereunder is in force and will not be canceled with less than thirty (30) days prior written notice to BCF, such notice to be by Certified Mail. The certificate(s) will list BCF as an additional named insured. Such insurance shall contain no "exclusions" or "deductibles," except as approved in writing by BCF. Failure of BCF to require the production of such certificates of insurance shall not absolve CONTRACTOR of its obligations in respect thereto. Should Contractors fail to procure and maintain such insurance, BCF shall have the right to procure and maintain same for and in the name of CONTRACTOR, and charge the cost and any related other expenses thereof to Grace Construction Management Company. No payment shall be made on this CONTRACT agreement prior to receipt of certificate of insurance acceptable to BCF.

Although Grace added "Burlington Coat Factory" as an additional insured on its policies, the BCF Entities claim Grace breached the contract because its insurer refused to provide coverage. However, there is nothing in the contract that requires that Grace's insurance be primary.

The BCF Entities also argue that, under the contract, they are entitled to complete indemnification from Grace "regardless of issues of negligence or fault." However, neither of the indemnification provisions in the contract contain language expressly requiring Grace to indemnify the BCF Entities for the BCF Entities' or their agents' own

negligence.[3]

> [T]he language of the [first] indemnity provision in no way demonstrates an unambiguous intention by [Grace] to provide indemnification for the negligence of [BCF] as required by the *Perry-Ruzzi* rule. By agreeing to language stating that [BCF was] indemnified for damages "only to the extent that" the damages were caused by the negligence of [Grace] and its sub-subcontractors, employees and anyone for whom it may be liable, the parties communicated their intent to limit any indemnification to that portion of damages attributed to the negligence of [Grace] and those under its supervision. The chosen language simply does not evince an intent to provide indemnification for damages due to the negligence of other unspecified parties, including [BCF]. Moreover, we read the second part of the provision, which states that the indemnity clause will apply "regardless of whether or not such claim... is caused in part by a party indemnified hereunder," merely to clarify that any contributory negligence by [BCF] will not bar their indemnification for damages due to [Grace's] negligence.[4]

The second indemnification provision is less specific than the first, in that it does not contain either the "only to the extent caused by" language, nor the "regardless of whether caused by" language, but it certainly contains

---

3. *Ruzzi v. Butler Petroleum Co.*, 527 Pa. 1, 7, 588 A.2d 1.4 (1991) ("The law has been well settled in this Commonwealth [since 1907] that if parties intend to include within the scope of their indemnity agreement a provision that covers losses due to the indemnitee's own negligence, they must do so in clear and unequivocal language. No inference from words of general import can establish such indemnification.")

4. *Greer v. City of Philadelphia*, 568 Pa. 244, 249-50, 795 A.2d 376, 379-80 (2002).

nothing stating that Grace will indemnify the BCF Entities for their own negligence. Under either provision, the court cannot determine whether Grace has any duty to indemnify the BCF Entities until their relative fault for Mr. Eddis' accident is decided.

In order to determine if either of the parties was negligent, there must be some evidence presented of their fault. Grace points to the expert report generated in the underlying action as evidence of negligence by the BCF Entities and their elevator maintenance company. In his report, the expert concluded as follows:

> I have concluded Mr. Eddis's injuries reported at the subject property were caused by BCF's failure to properly maintain and repair the subject elevator, gate and associated components. My investigation revealed BCF repeatedly ignored requests to repair the gate and doors of the subject elevator, creating an unsafe, unreliable and hazardous condition that resulted in Mr. Eddis's injuries. I have also concluded Schindler failed to properly repair the subject elevator, specifically the alarm bell prior to the incident resulting in Mr. Eddis's injuries.

> It is evident the incident was caused by a failure of the safety shoe and alarm bell of the subject elevator failed [sic] on the date of the incident or by the gate completely derailing from its track, resulting in the alarm bell not sounding. These conditions and the lack of a proximity edge installed on the subject elevator resulted in Mr. Eddis's injuries on the date of the incident.[5]

---

5. Report of Plick and Assoc, Professional Engineers, dated August 21, 2012, pp. 16-17.

This report and the materials upon which it is based are sufficient evidence to create an issue for trial as to whether the BCF Entities were negligent.

The evidence of Grace's fault is scant. The BCF Entities assert that Mr. Eddis was performing work for Grace under the contract when he was injured, which appears to be true. They also assert that Grace negligently trained and supervised Mr. Eddis with respect to his use of the freight elevator. The only evidence the BCF Entities point to in support of this claim is the testimony by Grace's project supervisor in which he admits that he "told the subcontractors' foremen that Burlington Coat had requested we grab either an assistant manager or the security guard to operate the freight elevators for us."[6] While this admission may be sufficient evidence of Grace's (and Mr. Eddis') duty to obtain assistance before using the elevator, it is not evidence that a breach of that duty caused Mr. Eddis' damages.

In trying to recover for an action in negligence, a party must prove four elements. They are:

1. A duty or obligation recognized by law.

2. A breach of the duty.

3. Causal connection between the actor's breach of the duty and the resulting injury.

4. Actual loss or damage suffered by complainant.

It is beyond question that the mere existence of negligence and the occurrence of injury are insufficient

6. Deposition of Arthur C. Snellbaker, Jr., dated September 19, 2012, p. 49.

to impose liability upon anyone as there remains to be proved the link of causation. Furthermore, our Supreme Court has stated that "even when it is established that the defendant breached some duty of care owed the plaintiff, it is incumbent on a plaintiff to establish a causal connection between defendant's conduct, and it must be shown to have been the proximate cause of plaintiff's injury."[7]

In this case, there is no evidence, expert or otherwise, that Mr. Eddis'[8] or Grace's failure to request assistance, rather than an alleged malfunction of the elevator, was the cause of his injuries.[9] Therefore, there is no evidence that Grace's breach of duty, or that of anyone other than the BCF Entities, was the cause of Mr. Eddis' injuries.

Since Grace did not expressly agree to indemnify the BCF Entities for the BCF Entities' own negligence, and they are the only ones who could be found liable at trial based on the evidence presented, Grace has no duty under the contract to indemnify them for the expenses they incurred in connection with the underlying Eddis action.

## CONCLUSION

For all the foregoing reasons, Grace's motion for summary judgment is granted and the BCF Entities' motion for summary judgment is denied.

---

7. *Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1286 (Pa. Super. 2005).

8. The BCF Entities claim that Mr. Eddis was negligent in failing to push the "stop" button to hold the doors open while he loaded the elevator, but they do not cite to evidence of record indicating that he failed to do so. *See* BCF Entities' reply brief, p. 3, ftnt 3.

9. Similarly, there is no evidence that Grace's alleged negligence in allowing workers such as Mr. Eddis to carry excessively heavy loads caused the elevator to close on Mr. Eddis.