**Paul MORGAN and Roxanne Morgan**

**v.**

**HARNISCHFEGER CORP.; Commonwealth of Pennsylvania, Pennsylvania Turnpike Commission, Medico Industries; HRI, Inc., L.B. Smith, Inc., Kobe Steel, Ltd., Century II, Inc., Penn East Corporation, Roadway Safety, Inc., and Michael Baker, Inc., American Asphalt Paving Company.**

**Appeal of HRI, Inc.**

Commonwealth Court of Pennsylvania.

Argued Dec. 3, 2001.
Decided Feb. 20, 2002.

Joseph A. Murphy, Scranton, for appellant.

Charles W. Craven, Philadelphia, for appellee, PA Turnpike Commission.

Paul T. Oven, Moosic, for appellee, American Asphalt Paving Co.

Before COLINS, Judge,
LEADBETTER, Judge, and
McCLOSKEY, Senior Judge.

LEADBETTER, Judge.

HRI, Inc., (HRI) appeals from an order of the Court of Common Pleas of Luzerne County, wherein the court ordered HRI to indemnify the Pennsylvania Turnpike Commission (Commission) for injuries sustained by Paul and Roxanne Morgan (plaintiffs). HRI presents three issues for our consideration. First, whether an indemnity clause between itself and the Commission is enforceable. Second, whether the doctrine of latches bars HRI from enforcing an indemnity clause between itself and American Asphalt Paving Company (American Asphalt). And third, whether the indemnity provision between itself and American Asphalt is enforceable if the doctrine of laches does not apply. For the reasons that follow, we affirm the trial court's order.

In 1989, the Commission contracted with HRI to perform certain highway repairs. HRI thereafter hired American Asphalt to handle a portion of the construction. That same year Paul Morgan, one of American Asphalt's employees, was seriously injured when he was pinned beneath a toppled crane. Plaintiffs filed suit against HRI, the Commission, and eight other defendants,[1] but not against American Asphalt.

---

1. The other defendants named in the complaint are as follows: Harnischfeger Corporation, Medico Industries, Inc., L.B. Smith,

In its answer and new matter, the Commission asserted a cross-claim against HRI on the basis of an indemnity provision in their contract (the primary contract). That provision reads in relevant part:

*Section 107—LEGAL RELATIONS AND RESPONSIBILITY TO THE PUBLIC*

107.14  Indemnity . . .

[HRI] shall assume the entire responsibility and liability for any damage or injury of any kind or nature whatever (including death resulting therefrom) to all persons, whether employees of [HRI] or otherwise, and to all property caused by, resulting from, arising out of, or occurring in connection with the execution of the work of [HRI], and if any claims for such damage or injury, (including death resulting therefrom) be made or asserted, whether or not such claims are based upon the alleged active or passive negligence or participation in the wrong of the Commission, its Commissioners, agents, servants, and/or employees (herein collectively the "Commission") or upon any alleged breach of any statutory duty or obligation on the part of the Commission; [HRI] agrees to indemnify and hold harmless the Commission, from and against any and all such claims, loss, costs, expense, liability, damage or injury, including legal fees, interest, penalties, and disbursements that the Commission may directly or indirectly sustain, suffer or incur as a result therefrom and [HRI] shall assume, on behalf of the Commission upon demand, the amount of any judgment that may be entered against the Commission, individually, jointly, or severally in any such action. . . .

Primary contract, Section 107.14. Notably, the Commission did not join American Asphalt as an additional defendant. However, several months later, HRI filed a joinder complaint against American Asphalt. HRI likewise based its claim on an indemnity provision in its contract with American Asphalt (the subcontract). The subcontract's indemnity provision reads as follows:

IDEMNIFICATION [sic] OF [HRI] AND [THE COMMISSION] FROM ALL LIABILITY—[American Asphalt] shall have charge of the entire work until completion and acceptance, and shall alone be liable for and shall pay all loss or damage caused by him or by his servants, agents or employees to property, buildings or adjacent work and for any accident to persons that may occur during the performance of the work covered by this contract or at any time thereafter as a consequence of the performance of said work. [American Asphalt] shall observe all state and municipality laws, ordinances, and regulations and shall defend and save harmless [HRI] and the [Commission] from all suits and claims whatsoever for loss of life or injury occurring to employees of [American Asphalt] who perform such work. [American Asphalt] agrees to fully idemnify, [sic] protect and save harmless [HRI] and the [Commission] from all liability from all claims, loss, damage, suits and actions of every kind and from all costs and expenses in connection with such claims, suits, and actions due to injuries to persons or damage to property whether resulting from accident, negligence or any other cause whatsoever occurring during the performance of the work covered by this Contract or at any time thereafter as a consequence of the performance of the same or which may

Inc., Kobe Steel, LTD., Century II, Inc., Penn East Corporation, Roadway Safety, Inc., and

Michael Baker, Inc.

at any time occur or result from or be caused by such work....

Subcontract, page 5, paragraph number 9. HRI did not specifically reference in its complaint that the Commission had cross-claimed against it. However, HRI alleg-edly attached a copy of the Commission's cross-claim to its complaint.

In 1998, after approximately eight years of discovery, plaintiffs entered into a joint tortfeasor release (release) with HRI and American Asphalt, but not the Commis-sion.[2] Without admitting fault, American Asphalt paid plaintiffs $350,000.00 on be-half of itself and HRI. In return, plaintiffs agreed to release HRI and American As-phalt from further liability. However, the agreement stated that plaintiffs intended to fully pursue their claims against the non-settling parties, and specifically pro-vided that any judgment plaintiffs obtained from a non-settling party would be re-duced *only* to the extent of the settling defendants pro rata share of joint and several liability under theories of negli-gence and strict liability. Conspicuously absent from the release is any agreement by plaintiffs to protect the settling defen-dants from further liability under the in-demnity clauses in their contracts, or any agreement by the settling defendants to release one another from cross or third party claims.

In January of 2000, the plaintiffs' case was scheduled for trial. Plaintiffs were prepared fully for trial, but the Commis-sion was not.[3] Three business days before trial, the Commission demanded HRI in-demnify and defend the Commission pur-suant to the primary contract. Two days later and one business day before trial,

HRI demanded that American Asphalt in-demnify and defend HRI pursuant to the subcontract. On the day of trial, plaintiffs settled the balance of their claims in the amount of $125,000.00. Pursuant to the terms of the settlement agreement, the Commission, HRI, and American Asphalt agreed to a hearing conducted by the trial court to determine their respective liability for this amount.

At the hearing, the parties submitted numerous documents, including expert re-ports regarding the merits and the rele-vant contract provisions. Based on this, the trial court enforced the Commission's indemnity rights under the primary con-tract and ordered HRI to pay the plain-tiffs. Further, the trial court found that the doctrine of laches barred HRI from enforcing the indemnity provision of the subcontract against American Asphalt. The trial court found that although Ameri-can Asphalt was a named defendant since 1991, no party formally demanded Ameri-can Asphalt to indemnify the Commission until the day before trial. Because of its laches finding, the trial court made no findings regarding the scope and enforce-ability of the indemnification provision in the subcontract.

On appeal, HRI presents three issues for our consideration.[4] First, HRI asserts that the indemnity clause in the primary contract between itself and the Commis-sion is not sufficiently unequivocal to apply to plaintiffs' claims. Second, HRI asserts that the trial court misapplied the doctrine of laches to bar HRI from enforcing the indemnification provisions of its contract with American Asphalt. Third, HRI as-

---

**2.** The release also included other defendants not material to our disposition of this matter.

**3.** According to American Asphalt's brief, plaintiffs had six medical, economic, and oth-er experts prepared to testify, whereas the Commission had none.

**4.** As a fourth issue HRI also asserts that the trial court failed to exclude evidence regard-ing American Asphalt's insurance carrier pur-suant to Rule 411 of the Pennsylvania Rules of Evidence. Because of our disposition of the laches issue, we need not reach this issue.

serts that the indemnification provisions in the subcontract are valid and should be enforced. We shall address these issues *seriatim.*

▮ HRI first contends that the indemnity provisions in the primary contract are not sufficiently unequivocal as to require it to indemnify the Commission for the injuries suffered by the employee of a subcontractor. Our Supreme Court has stated that "the liability on [an indemnitee's own negligence] is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation." *Ruzzi v. Butler Petroleum Co.,* 527 Pa. 1, 8, 588 A.2d 1, 4 (1991) quoting *Perry v. Payne,* 217 Pa. 252, 66 A. 553 (1907)). In the case *sub judice,* the primary contract language does not rest on words of general import; rather it specifically states that HRI must indemnify the Commission against injuries to:

> all persons, whether employees of [HRI] or otherwise ... whether or not ... claims are based upon the alleged active or passive negligence or participation in the wrong of the Commission, its Commissioners, agents, servants, and/or employees ... or upon any alleged breach of any statutory duty or obligation on the part of the Commission....

Primary contract, Section 107.14. Therefore, HRI's claim that the primary contract's indemnity provisions are not sufficiently specific and unequivocal is meritless.

▮ HRI next argues that the trial court misapplied the doctrine of laches to bar HRI from enforcing the indemnity provisions of the subcontract. Upon a review of the record, we agree that the trial court erred.

Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. [citation omitted] Thus, in order to prevail on an assertion of laches, [American Asphalt] must establish: a) a delay arising from [HRI's] failure to exercise due diligence; and, b) prejudice to [American Asphalt] resulting from the delay. [citations omitted] Moreover, the question of laches is factual and is determined by examining the circumstances of each case. [citation omitted]

*Sprague v. Casey,* 520 Pa. 38, 45, 550 A.2d 184, 187 (1988); *see also Todd v. Thompson,* 2 U.S. (2 Dall.) 105, 1 L.Ed. 309 (Pa.S.Ct.1790). HRI promptly demanded American Asphalt to indemnify it in 1991 via a joinder complaint. Further, the pleadings put American Asphalt on notice that the Commission demanded indemnification from HRI.[5] Therefore, American Asphalt knew or certainly should have known, that so long as plaintiff's claim against the Commission remained open, HRI continued to be exposed to liability for which it could demand American Asphalt to defend and indemnify it. It was incumbent upon American Asphalt to protect itself against this eventuality when it entered into the first settlement and release agreement, rather than blithely assuming that HRI and the Commission would not enforce at the time of trial the indemnification rights upon which they

---

5. American Asphalt claims that it lacked notice of the Commission's cross-claim against HRI because it was not a party when that pleading was filed and, thus, it was not served. However, we believe that once American Asphalt became a party to the litigation, it was charged with notice of all pleadings in the case, even those filed and served prior to its joinder.

based their complaints. Thus, the doctrine of laches is inapplicable.

■ Because the doctrine of laches does not apply, we reach HRI's third assertion, that the indemnity provisions of the subcontract are enforceable and within the scope of plaintiffs' claims.[6] Because we find that the language employed in the subcontract is not sufficiently specific, we hold that HRI may not enforce it against American Asphalt. The Superior Court of Pennsylvania summarized the applicable law in *Snare v. Ebensburg Power Co.*, 431 Pa.Super. 515, 520–522, 637 A.2d 296, 298–299 (1993):

> The Workers' Compensation Act (the Act) is the sole and exclusive means of recovery against employers for all injuries arising out of accidents occurring within the course of employment. 77 P.S. § 481(a). The exclusivity provision of the Workers' Compensation Act essentially "bars tort actions flowing from any work related injury." *Kline v. Arden H. Verner Co.*, 503 Pa. 251, 469 A.2d 158, 160 (1983). An employer may, however, consistent with the indemnification provision in the Act, 77 P.S. § 481(b), enter into an indemnity contract with a third party; the employer, then, may expressly assume liability for the negligence of a third party which results in injury to the employer's employee.
>
> The relevant portion of the Act provides:
>
> > In the event injury or death to an employe is caused by a third party, then such employe, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employes, representatives acting on their behalf or at their request shall not be liable

to a third party in any action at law or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action.

> 77 P.S. § 481(b) (emphasis added). [sic]
>
> Though specifically provided for in the statute, indemnification contracts in this context are not favored in the law and every intendment must be construed against the party seeking protection from liability or indemnification from the employer. [citation omitted]. The language in such contracts must be clear and unequivocal; the parties to *the contract must specifically provide that a named employer agrees to indemnify a named third party from liability for the acts of that party's negligence which cause harm to the named employer's employees*. *Bester v. Essex Crane Rental Corp.*, 422 Pa.Super. 178, 619 A.2d 304 (1993) [*appeal denied*, 539 Pa. 641, 651 A.2d 530 (1994)].

> \* \* \*

> Blanket indemnity clauses will not create liability. The parties must specifically utilize language which indicates that the employer/alleged indemnitor intends to indemnify the third party against claims by employees of the alleged indemnitor; this must clearly appear from the terms of the agreement.

(emphasis added). While we are not bound by decisions of the Superior Court, we agree that the statutory scheme of the Workers' Compensation Act should be abrogated only when the protections it affords are waived intentionally and unambiguously.

---

6. As noted above, the trial court made no specific findings on this issue. However, there are no factual issues necessitating a remand or otherwise barring us from deciding this issue now.

We do not find the indicia of such intent here. Indeed, the subcontract's indemnity provision contains precisely the type of boilerplate language that our sister court refuses to uphold, such as that in *Snare:*

> [Subcontractor/Sauer] Agrees to indemnify and hold harmless the Owner [Ebensburg Power Company] and Contractor [United] their successors and assigns, from and against any and all claims, demands, suits, actions, losses, liens, damages, or expenses and attorney's fees, however caused, resulting from arising out of or in any way connected with the Contract . . . .

*Snare,* 431 Pa.Super. at 521, 637 A.2d at 299 (alterations in original). Similarly, in *Bianculli v. Turner Construction Company,* 433 Pa.Super. 237, 243, 640 A.2d 461, 464 (1994), the court found the following indemnity provision inadequate:

> The subcontractor . . . covenants to indemnify and save harmless and exonerate the contractor . . . and the owner of and from all liability, claims and demands for bodily injury and property damage arising out of the work undertaken by the subcontractor, its employees, agents or its subcontractors and arising out of any other operation no matter by whom performed for and on behalf of the subcontractor, whether or not due in whole or in part to conditions, acts or omissions done or permitted by the contractor or owner.

As with the indemnity provisions in *Snare* and *Bianculli,* the indemnity provision in this case fails to specifically state that the parties intended for American Asphalt to indemnify HRI against HRI's own negligence resulting in injuries to American Asphalt's employees. Therefore, because the subcontract's indemnity provision lacks the requisite degree of specificity, we are constrained to hold it unenforceable.

For the foregoing reasons, we affirm the trial court's order.

***ORDER***

AND NOW, this 20th day of February, 2002, the order of Court of Common Pleas for Luzerne County in the above captioned matter is AFFIRMED.