Andrea LANE,

v.

COMMONWEALTH of Pennsylvania and Pennsylvania Department of Transportation and Neshaminy Constructors, Inc. and James J. Anderson Construction Company and Joseph B. Fay, Co.,

**Appeal of Neshaminy Constructors, Inc., Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 6, 2008.
Filed July 17, 2008.

John J. Delany, III, Philadelphia, for appellant.

Glenn M. Campbell, Media, for Anderson, appellee.

BEFORE: BOWES, SHOGAN and FITZGERALD,* JJ.

* Former Justice specially assigned to the Superior Court.

OPINION BY BOWES, J.:

¶ 1 In this appeal, Neshaminy Constructors, Inc., Appellant, seeks indemnification from James J. Anderson Construction Co., Appellee, for the verdict entered against Appellant and in favor of Andrea Lane ("Plaintiff") in this personal injury action. Application of controlling case law to the jury's resolution of this action compels the conclusion that Appellant is not entitled to indemnification from Appellee. We therefore affirm.

¶ 2 Plaintiff was injured on June 2, 2003, while riding a bicycle along a path in Pennypack Park, Philadelphia. On the day in question, Plaintiff, a Philadelphia Police Officer, was training as a bicycle patrol officer. She testified that she temporarily left the path after her rear tire slipped to the right. She was steering her bicycle back onto the path when the front wheel hit a steel reinforcement bar that had been placed near to and partially on the path. As a result, Plaintiff was thrown from her bicycle and sustained injuries. Plaintiff left the path when her wheel slipped on an unpaved portion consisting of mud and stones.

¶ 3 The area in question was part of a construction site. The Pennsylvania Department of Transportation ("PennDOT"), which is not a party on appeal, contracted with Appellant, as general contractor, to complete road work at several areas along Interstate 95. Work on Interstate 95 Pennypack Bridge was part of this venture. On January 30, 2003, Appellant executed a subcontract with Appellee to perform some of the work, including work at the Pennypack Park Bridge site.

¶ 4 Appellee had excavated in the area of the fall and then vacated the job site

two to three months before the accident. While Appellee was slated to return to the area at a later time to complete its contractual obligations, Appellee was not *in situ* when Plaintiff was injured. Appellee returned to complete its portion of the project, which included repaving the path where Plaintiff was biking, in August 2003.

¶ 5 Plaintiff instituted this action against Appellant and Appellee, among others, alleging that they had created the conditions causing her to fall. Appellant then attempted to join Providence Steel Co., Inc. ("Providence"), which was another subcontractor on the project. Providence apparently was responsible for leaving the steel reinforcement bar on the bike path. Joinder was denied based solely on its untimeliness, and Appellant does not challenge this ruling on appeal.[1]

¶ 6 After the complaint was filed, Appellant raised an indemnification cross-claim against Appellee in the event that Appellant was found liable. The trial court reserved ruling on Appellant's right to indemnification as to Appellee, and the case proceeded to a jury. Following trial, the jury found Appellant 100% responsible for Plaintiff's injuries and exonerated Appellee. The jury awarded Plaintiff $3,000,000 in damages. The court then severed Appellant's indemnification claim from the personal injury action. It subsequently concluded that Appellant was not entitled to indemnification against Appellee for Appellant's own negligence. This appeal followed.

 ¶ 7 In this case, Appellant seeks indemnification based upon a clause in Appellee's subcontract, which was drafted by Appellant. Initially, we note that

---

1. Appellant indicates that it has since instituted a separate action against Providence in the Philadelphia County Court of Common Pleas

seeking indemnification from Providence for the jury award herein.

the interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

■ *Nevyas v. Morgan,* 921 A.2d 8, 15 (Pa.Super.2007) (quoting *Currid v. Meeting House Restaurant, Inc.,* 869 A.2d 516, 519 (Pa.Super.2005)). "In addition, a preferred contract interpretation ascribes under all circumstances 'the most reasonable, probable, and natural conduct to the parties.'" *Gaffer Insurance Co., Ltd. v. Discover Reinsurance Co.,* 936 A.2d 1109, 1113 (Pa.Super.2007) (quoting *Midomo Co. v. Presbyterian Housing Development Co.,* 739 A.2d 180, 191 (Pa.Super.1999)). Further, any contractual ambiguities are construed against the drafter of the provision. *Bucks Orthopaedic Surgery Associates, P.C. v. Ruth,* 925 A.2d 868, 871 (Pa.Super.2007).

¶ 8 Appellant herein is seeking indemnification against Appellee for Appellant's own negligence. In such a situation, the *Perry–Ruzzi* rule is implicated. In *Perry v. Payne,* 217 Pa. 252, 66 A. 553 (1907), Perry, the owner of a building, was found liable by a jury for a man's death. The man died due to the negligent operation of an elevator by one of the owner's employees. The owner sought indemnification from Payne, the contractor who had con-structed the building in question. Payne had relinquished control of the building to the owner but was using the elevator as a staging platform for painting in order to complete its contractual obligations.

¶ 9 Under indemnification language in a bond procured by the contractor, the contractor was responsible for damages arising from accidents to persons passing near the work. The owner contended that the bond indemnified it against all damages arising from injuries to any person close to the work, regardless of whether the injuries were caused by the negligence of the contractor or by the owner's own negligence.

■ ¶ 10 Our Supreme Court declined to give the language that construction. It considered the circumstances and the parties' objective in creating the bond instrument and concluded that the indemnification was intended to apply only to damages or losses occasioned by the contractor's work or negligence. The court stated, "It is contrary to experience and against reason that the contractors should agree to indemnify Perry against the negligence of himself or his employees. It would make them insurers, and impose a liability upon the contractors, the extent of which would be uncertain and indefinite[.]" *Id.* at 555. Thus, the *Perry* Court concluded that a contract will not be construed to provide indemnification against a person's own negligence unless that intent is expressly and unequivocally stated and the circumstances indicate that the contract is intended to so apply.

¶ 11 The *Perry* rule was reaffirmed in *Ruzzi v. Butler Petroleum Co.,* 527 Pa. 1, 588 A.2d 1 (1991), where a gas station owner hired a contractor to supply and install gasoline tanks. In the construction contract, the owner promised to indemnify the contractor from losses, claims, or injuries caused by any explosion that occurred

due to the installation or repair of the tanks. One of the tanks arrived on site with a hole that caused an explosion and injured a person employed by the contractor. A jury found the contractor to be eighty-four percent negligent in causing the injuries. The contractor sought indemnity from the owner. Despite the broad language employed, our Supreme Court declined to construe it as requiring the owner to indemnify the contractor for the contractor's own negligence. It ruled:

> The law has been well settled in this Commonwealth for 87 years that if parties intend to include within the scope of their indemnity agreement a provision that covers losses due to the indemnitee's own negligence, they must do so in clear and unequivocal language. No inference from words of general import can establish such indemnification.

*Id.* at 4. It reiterated the same logic announced in *Perry* that indemnity against one's own negligence is "so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation." *Id.* (quoting *Perry,* 66 A. at 557).

¶ 12 Eleven years later, in *Greer v. City of Philadelphia,* 568 Pa. 244, 795 A.2d 376 (2002), the Court again enforced the *Perry–Ruzzi* principle. The *Greer* decision is particularly instructive regarding the within matter. In that case, PennDOT hired a contractor to remove overhead signs from an interstate highway and to manage traffic during the removal operation. The traffic management duty was contracted out to a subcontractor. The subcontractor contractually agreed to indemnify both PennDOT and the contractor

> from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Subcontractor's Work under this Subcontract **but only to the extent caused in whole or in part by negligent acts or omissions of the Subcontractor,** the Subcontractor's Sub Subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, **regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.**

*Id.* at 377 (emphases in original).

¶ 13 During a traffic stoppage caused by the sign removal, a motorist was injured when his car was rear-ended by another vehicle. The motorist instituted an action against Philadelphia, the motorist who had struck him, PennDOT, the subcontractor, and the contractor. The tortfeasor settled, and a nonsuit was granted in favor of Philadelphia. The case proceeded to a jury as to the liability of PennDOT, the subcontractor, and the contractor. The jury assessed the plaintiff with twelve percent comparative negligence and each of the three defendants with twenty-two percent liability for the plaintiff's injuries. The tortfeasor was responsible for the remaining percentage.

¶ 14 After the verdict, PennDOT and the contractor sought judgment notwithstanding the verdict, claiming that the subcontractor was required to indemnify them for their proportionate share of the verdict. The trial court denied indemnification but was reversed by the Commonwealth Court. The Commonwealth Court reasoned that the subcontract language limited the subcontractor's indemnification only to the extent of the subcontractor's negligence, even if the damages were partially caused by the negligence of PennDOT and the contractor. Since the subcontractor was found liable, the Commonwealth Court

held that PennDOT and the contractor were contractually entitled to be indemnified up to an amount equal to the subcontractor's negligence.

¶ 15 Our Supreme Court disagreed and reversed. The Court noted that the case involved application of the *Perry–Ruzzi* rule. Pursuant to that rule, the subcontractor would be considered responsible for the damages caused by PennDOT's and the contractor's negligence only if the language of the subcontract clearly and unequivocally stated that the subcontractor intended to provide such coverage.

¶ 16 The *Greer* Court observed that the contract provided indemnity from claims for damages "only to the extent caused in whole or in part by negligent acts or omissions of the Subcontractor, the Subcontractor's Sub Subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable," and "regardless of whether or not such claim ... is caused in part by a party indemnified hereunder." The contractor argued "that these provisions clearly and unequivocally provide it and PennDOT with complete indemnity for their own negligence, as long as [the subcontractor was] also partially negligent." *Id.* at 379. PennDOT argued that the provision unambiguously indemnified it and the contractor for their own negligence only up to an amount equal to the subcontractor's liability for its own negligence.

¶ 17 The Court rejected both interpretations, concluding that the provision did not evidence an unambiguous intent by the subcontractor to provide indemnification for the other parties' own negligence. It noted that the contract stated that Penn-DOT and the contractor were indemnified for damages "only to the extent that" the damages were caused by the negligence of subcontractors and its sub-subcontractors. Thus, the Court held that the parties

"communicated their intent to limit any indemnification to that portion of damages attributed to the negligence of [the subcontractor] and those under its supervision. The chosen language simply does not evince an intent to provide indemnification for damages due to the negligence of other unspecified parties, including an indemnitee." *Id.* at 379.

¶ 18 The Court read "the second part of the provision, which states that the indemnity clause will apply 'regardless of whether or not such claim ... is caused in part by a party indemnified hereunder,' merely to clarify that any contributory negligence by PennDOT and the subcontractor will not bar their indemnification for damages due to subcontractor's negligence." *Id.* at 379–80. The Court observed that the contractor's interpretation ignored the "only to the extent" language. PennDOT's interpretation that the phrase merely limited the subcontractor's assumption of the liability of PennDOT and the contractor to an amount equal to that for which the subcontractor was independently liable was similarly rejected. Our Supreme Court held that the contract did not place beyond all doubt that the parties intended the interpretation advanced by PennDOT. It stated:

> [W]e must opt for the interpretation that does not shoulder [the subcontractor] with the fiscal responsibility for [the contractor's] and PennDOT's negligence. *Perry,* 66 A. at 557; *Ruzzi,* 588 A.2d at 4. Here, the ... Contract simply does not "put it beyond doubt by express stipulation" that [the subcontractor] intended to indemnify PennDOT and [the contractor] for their own negligence. *Perry,* 66 A. at 557. If [the subcontractor] intended to accept the liability PennDOT contends it accepted, it would have been a simple matter to write the indemnity clause to unambiguously state

that the indemnitees were indemnified for an amount of damage attributed to their own negligence up to the amount for which the indemnitor was independently responsible. However, the parties to the contract did not do so. Instead, they used the language quoted above, which we easily read to only indemnify [the contractor] and PennDOT for that portion of damages caused by the negligence of [the subcontractor], its sub-subcontractors and employees.

*Id.* at 380–81.

¶ 19 With these principles firmly in mind, we now examine the lengthy indemnification provision in question, which is contained in section 10 of the subcontract between Appellant and Appellee. Appellant finds support for its position in several parts of the provision, *see* Appellant's brief at 22, and we will address each portion separately in accordance with the above tenets. Appellant first relies upon language in subsection 10(b). That subsection provides that Appellee, an "Indemnifying Part[y]" pursuant to the clause's preamble:

> (b) Assumes and agrees to be liable for, and shall defend, indemnify and hold the Indemnified Parties [which, in the preamble, is defined to include Appellant] harmless from and against any and all Damages and Claims arising or resulting from, relating to, or in connection with, . . . injuries to persons including death, regardless of whether any such Damages and Claims are based on or caused by any of the Indemnified Parties' active or passive negligence or participation in the wrong upon which the Damages and Claims are based, and from and against any and all Damages and Claims arising or resulting from, relating to, or in connection with, any act, breach or omission of the Indemnifying Parties **in connection with the performance of this Subcontract and any work performed hereunder.**

(Emphasis added).

¶ 20 Based on the fact that the jury herein specifically exonerated Appellee from liability in connection with the accident, that verdict becomes conclusive herein regarding the effect of this contractual language. The verbiage clearly and unambiguously provides that Appellant's liability must arise or result from an act of Appellee performed in connection with its work on the project.

¶ 21 In this case, the jury determined that Appellee was not negligent; therefore, based on this finding, nothing that Appellee did in connection with the project resulted in Appellant's liability in this action. We note that the jury's finding is fully supported by the record. Plaintiff testified that after she left the path when she slipped on the unpaved portion, she was in full control of her bicycle; she stated that the only reason she fell was because her front wheel struck the rod. Appellee was not involved in placing the location of the rod, which had been set there when Appellee was not on site. Thus, Appellant's liability in this case does not arise in connection with the defect in the path; it arises from the fact that steel reinforcement rods were left along its way.

¶ 22 In light of these facts, *Hershey Foods Corp. v. General Electric Service Co.,* 422 Pa.Super. 143, 619 A.2d 285 (1993), is instructive. In that case, the owner of property brought an action seeking indemnification from the employer of a worker who was killed on the owner's property. The employer had contracted to perform work at the owner's property. The contract contained indemnification language similar to the language at issue in this case. In a separate action against the owner by the employee, the owner had been found liable for the employee's death.

We determined that by executing the indemnification contract, the employer could be required to indemnify the owner of the property even against its own negligence. However, in that case, the employee had been killed while he was on a work break from his job and away from the actual jobsite, but while still on the owner's property. Since the contract provided that the owner was not entitled to indemnification unless the employee was injured while performing work, we concluded that the owner was not entitled to indemnification under the facts as applied to the language.

¶ 23 In the present case, the contract language provides for Appellee's indemnification of Appellant for Appellant's own negligence and is enforceable. However, the language unequivocally requires Appellant's liability to be attendant to Appellee's work. Herein, the jury determined that Appellee's work did not cause the fall. There can be no indemnification in such a circumstance since Appellant was not liable due to Appellee's work.

¶ 24 Appellant does suggest that Plaintiff's accident arose or resulted from or related to or was in connection with Appellee's work. It argues, "The record is clear in that the ditch that Anderson excavated and its subsequent filling-in the ditch with a stone base caused Plaintiff's accident. Anderson did not properly maintain its work, as specified within the Subcontract, and this led to a change in grade of the stone and permitted a build-up of mud to congregate in the depression. As a result, Plaintiff's bike was caused to slide off the bike path and into harm's way." Appellant's brief at 32.

¶ 25 The flaw in this position is that the jury considered and rejected Appellant's defense that the defect in the path caused Plaintiff's injuries. Appellant is focusing on the reason that Plaintiff's bicycle left the path rather than the instrumentality that actually caused her injuries. Plaintiff retained control over her bicycle and was returning to the path when the accident occurred.

■ ¶ 26 Appellant also relies upon subsection (c) of section 10, which states that Appellee "Warrants and guarantees the work and materials covered by this Subcontract and agrees to cure at its own expense, any defect in materials or workmanship which may occur or develop prior to the Contractor's release from responsibility to the Owner therefore." This provision contains no affirmative language indicating that Appellee is indemnifying Appellant against its own negligence. It provides that Appellee would be required to rectify any defect.

■ ¶ 27 Next, Appellant relies upon subsection (f), which states that Appellee:

(f) Assumes and agrees to be liable for, and shall defend, indemnify and hold the Indemnified Parties harmless from and against any and all Damages and Claims arising or resulting from, relating to, or in connection with, any act or failure to act, in whole or in part, by the Indemnifying Parties, any unexcused delay or disruptions in the Work Items or progress on the Project caused by the Indemnifying Parties, any breach of warranty by the Indemnifying Parties, any default in performance of the Work Items by the Indemnifying Parties, or any Claims asserted against the Indemnified Parties in connection with any labor, materials or equipment supplied or provided for the performance of the Work Items, including without limitation, Claims for payment for such labor, materials or equipment.

¶ 28 This language suffers from the same shortcoming as that contained in subsection (b). In this provision, Appellee assumed liability for damages arising or

resulting from any of its acts or its failure to act. In this case, as noted above, nothing that Appellee did or failed to do resulted in the damages assessed in this action. The damages were caused by the steel rods and not by the defect in the path, which pertained to Appellee's actions.

¶ 29 Appellant then argues in favor of indemnification for its own negligence under subsection (k) of section 10:

(k) Subcontractor is an independent contractor and not an agent or employee of the Contractor. As an independent contractor, the Subcontractor shall be aware and assume full responsibility for compliance with all Federal, State and local laws, ordinances and regulations, including but not limited to those governing, relating or referring to employment of labor, hours of work, workers' compensation, unemployment compensation, safety and health, environmental protection, working conditions, payment of wages or benefits, deductions for taxes, and notification of excavation. Subcontractor agrees, to the fullest extent permitted by law, to indemnify, defend and hold the Indemnified Parties harmless from and against any and all Damages and Claims arising or resulting from, relating to, or in connection with, the failure of any of the Indemnifying Parties to comply with said laws, ordinances and regulations. Subcontractor shall comply with the regulations, policies and procedures of the Contractor and of any insurance company, which issues a policy on any part of the Jobsite or the Work Items. **Subcontractor agrees, to the fullest extent permitted by law, to indemnify, defend and hold the Indemnified Parties harmless from and against any and all Damages and Claims arising or resulting from, relating to, or in connection with, a violation by any of the Indem-nifying Parties of any such policy or procedure.**

¶ 30 Appellant's reliance on this provision fails again because the jury concluded that the damages and claim herein did not result from or relate to a violation by Appellee from any of the policies or procedures outlined in subsection (k).

¶ 31 Finally, Appellant claims that an additional indemnification provision in its contract with the owner was passed through to the subcontract when Appellee agreed to the provisions of the prime contract. Appellant's brief at 23, 54–55. However, our Supreme Court has specifically rejected the theory that an indemnification clause in the prime contract providing indemnification for a party as to that party's own negligence can be incorporated by means of a general pass-through provision in the subcontract from the prime to the subcontract. *Bernotas v. Super Fresh Food Markets, Inc.*, 581 Pa. 12, 863 A.2d 478 (2004).

¶ 32 Conclusive in the present case is the jury's determination that Plaintiff's injuries were caused when the bike struck the rod, propelling the Plaintiff over her bicycle. This determination is fully supported by the record as Plaintiff unequivocally testified that she had control over her bicycle as it left the path and was readily maneuvering it back onto the path. Plaintiff's accident did not arise out of or in connection with Appellee's work because, according to the jury, that work was not the cause of her injuries.

¶ 33 In sum, we conclude that the language of this contract established that Appellee's indemnification obligation does not extend to injuries or claims that bore no relation to its work. The circumstances surrounding this contract support this interpretation. Appellee is not an insurance company and certainly did not intend to

assume liability for all injuries occurring at the construction site regardless of whether its work caused those injuries. Indemnity for another party's negligence causing injuries to persons on the construction site would be a hazard so unusual and extraordinary that Appellee cannot be presumed to have assumed such an obligation absent express language in that regard. The *Perry–Ruzzi* principle applies herein.

¶ 34 Appellant also claims that the jury should have been permitted to hear evidence on its indemnification claims. As noted above, the construction of a contract is a question of law for the court to decide, a point of law that Appellant concedes at page 64 of its brief. *Nevyas, supra.* Thus, this claim fails.

¶ 35 Appellant's final argument is that this indemnification claim was prematurely decided, and in order to avoid the possibility of inconsistent verdicts, it should have been joined with its indemnification case pending against Providence, the contractor that left the steel bar on the bike path. This contention has been waived. Appellant expressly submitted the indemnification issue to the trial court for resolution both in pretrial pleadings and following the jury award. It was only after the trial court declined to find indemnification that Appellant belatedly raised this position in post-trial motions. An issue that has not been raised prior to or during trial is not preserved merely by its inclusion in post-trial motions. Pa.R.C.P. 227.1(b)(1).

¶ 36 Order affirmed.