J. S21031/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JACK J. COLE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| LAURA M. COLE, | : | No. 1330 WDA 2017 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered August 17, 2017,
in the Court of Common Pleas of Fayette County
Civil Division at No. 812 of 2015 G.D.

BEFORE: OLSON, J., MURRAY, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED JULY 12, 2018**

Laura M. Cole ("Wife") appeals from the August 17, 2017 order entered in the Court of Common Pleas of Fayette County that denied that part of her motion to enforce the parties' October 21, 2015 marital settlement agreement ("executed MSA")[1] wherein she requested that the trial court order appellee Jack J. Cole ("Husband") to pay her certain funds that she claims that she is entitled to under the executed MSA. After careful review, we reverse.

The trial court set forth the following:

> The parties were divorced on March 31, 2016, after entering into [the executed MSA on] October 21, 2015. On July 10, 2017, [Wife] filed her [m]otion to [e]nforce [executed MSA], arguing that she is

---

[1] When referring to a marital settlement agreement, we will abbreviate it as "MSA."

entitled to funds from the "house account[,"] identified in paragraph 11(a) of the [executed MSA].

At the hearing on [Wife's] [m]otion, this [c]ourt accepted the following stipulations by the parties: (1) On April 8, 2015, the amount of $25,460.01 was the balance of the parties' "[h]ouse [a]ccount"; and (2) [t]he total amount of $5,652.22[2] was taken from the "[h]ouse [a]ccount" for the May and June house payments. (There were other stipulations; however, only the two mentioned herein are relevant to the issue on appeal.)

The parties' [executed MSA] includes the following provision:

11.    Checking Savings Accounts.

a)    Accounts in Husband's name only and Joint Accounts. Except for the joint "house account" described in Paragraph 13(c) herein, Wife does, by these presents, set over and assign to Husband any right, title or interest she may have in and to any checking and/or savings accounts titled solely in Husband's name or in the name of Husband and Wife, including but not limited [to] the accounts in Community Bank and First Niagra Bank; and Wife does, by these presents, waive and relinquish any right, title or interest she may have in and to the same.

---

[2] We note that the record reflects that the parties stipulated that the mortgage payments totaled $4,652.22. (Notes of testimony, 8/15/17 at 8-9.)

> Although Paragraph 11(a) of the parties' [executed MSA] references Paragraph 13(c), the [executed MSA] is devoid of Paragraph 13(c), and Paragraph 13 addresses the issue of Disclosure and makes no reference to a "house account[."] In fact, there is no other provision in the parties' [executed MSA that] references a "house account[."]

Trial court opinion, 11/7/17 at 1-2 (emphasis omitted).

The record reflects that the parties entered into an oral MSA on April 8, 2015 ("oral MSA"). The record further reflects that on May 6, 2015, Husband filed a petition for special relief to confirm the parties' oral MSA, among other things. In that petition, Husband memorialized his understanding of the parties' oral MSA. With respect to the house account that is the subject of this appeal, Husband memorialized his understanding of the parties' intentions regarding its distribution as follows:

> The "[h]ouse [a]ccount" at Community Bank which contained approximately $24,500.00 was to be disposed of as follows[:] $10,000.00 applied to the mortgage on the marital home, $5,000.00 to [Wife's] closing costs upon her refinancing the mortgage on the marital home and the balance to be given to [Wife] to defray [Wife's] expenses until [Husband] begins paying [Wife] $1,000.00 per month by way of alimony beginning January 2016.

Husband's "petition for special relief to confirm [oral MSA] and to stay [Wife's] claim for spousal support," 5/6/15 at 3, ¶ 5(s).

On June 11, 2015, the trial court conducted a hearing on Husband's petition for special relief. On June 30, 2015, the trial court entered an order granting Husband's petition and directing Husband's counsel to "prepare and

provide to [Wife's] Counsel [an MSA] which reflects the terms of the parties' [oral] agreement, **as set forth in the Petition**." (Order of court, 6/30/15 (emphasis added).) The trial court also ordered Wife to execute the agreement within 20 days of Husband's presenting it to Wife. (**Id.**) The record further reflects that although Wife initially refused to sign the MSA that the trial court ordered Husband to draft, the parties did execute the MSA on October 21, 2015.

Following entry of the parties' divorce decree on March 31, 2016, Wife appealed to this court, challenging the enforceability of the oral MSA.[3] **Cole v. Cole**, No. 606 WDA 2016, unpublished memorandum (Pa.Super. filed April 24, 2017). Specifically, Wife argued that "the trial court erred as a matter of law by upholding an agreement that was not in writing and executed by the parties." (**Id.** at 5.) On appeal, a panel of this court determined that the parties entered into an enforceable oral MSA and affirmed the divorce decree.

On July 17, 2017, Wife filed a motion to enforce the executed MSA wherein she alleged, with respect to the house account, that Husband liquidated the house account, diverted the funds to his own use, and failed to relinquish $25,460.01 to her as required under the executed MSA.

---

[3] We note that entry of the parties' divorce decree rendered the trial court's June 30, 2015 order enforcing the oral MSA a final, appealable order. **See Sneeringer v. Sneeringer**, 876 A.2d 1036, 1038 (Pa.Super. 2005) (finding that "interim matters in divorce actions do not become final until a divorce decree is entered.").

- 4 -

(Wife's motion to enforce the executed MSA, 7/17/17 at 2, ¶ 5.) On August 15, 2017, the trial court conducted a hearing on Wife's motion to enforce the executed MSA. During that hearing, the parties stipulated that on April 8, 2015, which was the date on which the parties agreed to the terms of the oral MSA, the balance of the house account was $25,460.01. (Notes of testimony, 8/15/17 at 7-8.) After that stipulation, Husband's counsel stated that because the purpose of the account was for the benefit of the house, Husband should receive credit for two mortgage payments that totaled $4,652.22. (*Id.* at 8.) The parties then stipulated that two mortgage payments were made from the house account in the total amount of $4,652.22. (*Id.* at 8-9.) Outside of Wife's testimony affirming that she heard the stipulations regarding the house account, Wife's counsel elicited no other testimony concerning the house account or how the parties understood that it was to be distributed.

Thereafter, the trial court entered the August 17, 2017 order that denied Wife's motion to enforce the executed MSA with respect to the house account, which is the subject of this appeal. On September 5, 2017, Wife filed a motion to reconsider the August 17, 2017 order pursuant to Pa.R.Civ.P. 1930.2(b), which permits an aggrieved party in a domestic-relations matter to file a motion for reconsideration in accordance with Pa.R.A.P. 1701(b). On September 15, 2017, Wife filed a notice of

appeal to this court.[4]   On September 19, 2017, the trial court entered an

order that denied Wife's motion for reconsideration.   On October 3, 2017,

the trial court ordered Wife to file a concise statement of errors complained

of on appeal pursuant to Pa.R.A.P. 1925(b).   Wife timely complied.   The trial

court then filed its Pa.R.A.P. 1925(a) opinion.

Wife raises the following issues for our review:

> [1.]   Whether the trial court abused its discretion in failing to award a marital bank account to Wife, based upon an ambiguity, when the law of the case, as well as a stipulation as to value of the account at [the] time of trial, clearly designated that the account be distributed to Wife[?]
>
> [2.]   Whether the trial court's decision in failing to award the marital account to Wife, thereby resulting in a total distribution of the account to Husband rather than an equitable distribution of the account, is contrary to the divorce code's stated goal of economic justice as set forth in 23 Pa.C.S. § 3102(a)(6)[?]

Wife's brief at 4.

Our standard of review is well settled:

> When interpreting [an MSA], the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting [an MSA], we must decide whether the

---

[4] We note that pursuant to Pa.R.Civ.P. 1930.2, where a trial court does not grant a motion for reconsideration in a domestic-relations matter within 30 days of the filing of such a motion, the time for filing a notice of appeal to this court runs as if the motion for reconsideration had never been presented to the trial court.  Pa.R.Civ.P. 1930.2(b).

trial court committed an error of law or abused its discretion.

> "[J]udicial discretion" requires action in conformity with law on facts and circumstances before the trial court after hearing and due consideration. Such discretion is not absolute, but must constitute the exercises of sound discretion. This is especially so where, as here, there is law to apply. On appeal, a trial court's decision will generally not be reversed unless there appears to have been an abuse of discretion or a fundamental error in applying correct principles of law. An "abuse of discretion" or failure to exercise sound discretion is not merely an error of judgment. But if, in reaching a conclusion, law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or lacking in reason, discretion must be held to have been abused.

> ***In re Deed of Trust of Rose Hill Cemetery Ass'n Dated Jan. 14, 1960***, 590 A.2d 1, 3 (Pa. 1991) (internal citations omitted). Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is ***de novo*** and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

***Stamerro v. Stamerro***, 889 A.2d 1251, 1257-1258 (Pa.Super. 2005)

(footnote, quotation marks, and some citations omitted).

We also note that:

> In Pennsylvania, we enforce property settlement agreements between husband and wife in accordance with the same rules applying to contract interpretation. . . .
>
> It is well-established that the paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. When the trier of fact has determined the intent of the parties to a contract, an appellate court will defer to that determination if it is supported by the evidence.

*Lang v. Meske*, 850 A.2d 737, 739-740 (Pa. Super. 2004) (internal citations omitted; citation omitted).

Here, in denying Wife's motion to enforce the executed MSA with respect to the house account, the trial court concluded that

> [p]erhaps the denial of Wife's motion did in fact result in an inequitable distribution. However, Wife's request for enforcement was simply not supported by the evidence presented at the hearing. The trial court could not make the giant leap that Wife was entitled to receive a certain amount from the "house account" when there was absolutely no testimony whatsoever to support her claim.

Trial court opinion, 11/7/17 at 4-5.

The record, however, demonstrates that the trial court determined the intent of the parties with respect to the distribution of the funds contained in the house account prior to the hearing on Wife's motion to enforce the executed MSA. The record reflects that the trial court conducted a hearing on Husband's petition to confirm the oral MSA on June 11, 2015. During that hearing, Husband's then-attorney Michelle Kelley testified that the parties met with her on April 8, 2015, in order to enter into an agreement to

divide their marital assets. (Notes of testimony 6/11/15 at 7-8.) The record further reflects that Husband set up the house account in the names of both Husband and Wife in order to help Wife stay in the marital home until she was able to refinance the mortgage and until Husband began paying Wife alimony. (*Id.* at 51-53.) The record also reveals that Husband acknowledged that $10,000 of the money in the house account was to be used to pay down the principal on the marital residence, which residence was to be distributed to Wife; approximately $5,000 was to pay for Wife's closing costs to refinance the mortgage on the marital residence; and that Wife could draw down the remainder of the funds in the house account to defray house-related expenses. (*Id.* at 53; *see also* Husband's "petition for special relief to confirm [oral MSA] and to stay [Wife's] claim for spousal support," 5/6/15 at 3, ¶ 5(s).) Attorney Kelley also testified that her understanding of the parties' oral MSA with respect to the house account was that after Wife refinanced the mortgage on the marital residence, any balance remaining in the house account was to be distributed to Wife. (*Id.* at 44.)

The record also demonstrates that following the June 11, 2015 hearing on Husband's petition to confirm the oral MSA, the trial court entered an order requiring that Husband cause an MSA to be drafted that reflected, among other things, that the house account contained $24,500 and that $10,000 should be applied to the mortgage on the marital home,

$5,000 should be applied to Wife's closing costs upon her refinancing the mortgage on the marital home, and the balance should be distributed to Wife to defray Wife's expenses until Husband begins paying Wife $1,000 per month by way of alimony beginning January 2016. (**See** order of court, 6/30/15 requiring that Husband draft an MSA to reflect the parties' agreement as set forth in Husband's petition to confirm the oral MSA; **see also** Husband's "petition for special relief to confirm [oral MSA] and to stay [Wife's] claim for spousal support," 5/6/15 at 3, ¶ 5(s) setting forth disposition of house account.) We reiterate that on appeal of the parties' divorce decree, a panel of this court affirmed the enforceability of the oral MSA. **Cole**, No. 606 WDA 2016.

In this appeal, the trial court concluded that the executed MSA created "an ambiguity as to the parties' intended distribution of the 'house account[.]'" (Trial court opinion, 11/7/17 at 3.) At the outset, and notwithstanding the fact that the trial court's June 30, 2015 order resolved any ambiguities regarding the distribution of the house account, any ambiguity should have been construed against Husband who drafted the court-ordered provision. **See Lane v. Commonwealth**, 954 A.2d 615, 619 (Pa.Super. 2008) (reiterating that "any contractual ambiguities are construed against the drafter of the provision" (citation omitted)). Additionally, the trial court denied Wife's request for enforcement of the executed MSA and distribution of the house account funds to her because

"there was absolutely no testimony to support her claim" at the August 15, 2017 hearing on Wife's motion to enforce the executed MSA. (Trial court opinion, 11/7/17 at 5.)

In her motion to reconsider the August 17, 2017 order, as well as her brief to this court, Wife argues that the law of the case requires that the house account be distributed to her. The "law of the case" doctrine:

> refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter. Among the related but distinct rules which make up the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.
>
> The various rules which make up the law of the case doctrine serve not only to promote the goal of judicial economy (as does the coordinate jurisdiction rule) but also operate (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end.

**Commonwealth v. Starr**, 664 A.2d 1326, 1331 (Pa. 1995) (internal citations omitted). "The rule of the 'law of the case' is one largely of

convenience and public policy, both of which are served by stability in judicial decisions, and it must be accommodated to the needs of justice by the discriminating exercise of judicial power." ***Commonwealth v. Barnes***, 167 A.3d 110, 121 (Pa.Super. 2017) (***en banc***) (citation omitted).

Here, the law of the case doctrine does not apply because the trial court did not reopen questions decided by this court or by a court of concurrent jurisdiction. Specifically, in Wife's appeal to this court of the divorce decree wherein a panel of this court determined that the oral MSA is enforceable, this court did not remand for further proceedings and the trial court did not subsequently alter this court's decision regarding the enforceability of the oral MSA. Additionally, there was no subsequent appeal in this case wherein this court altered its previous determination regarding the enforceability of the oral MSA. Finally, because the Honorable Linda R. Cordaro has presided over this case in the trial court since Husband filed his complaint in divorce on April 27, 2015, Judge Cordaro did not alter the resolution of a legal question previously decided by a court of concurrent jurisdiction.

In this case, however, the trial court altered the resolution of a legal question that the trial court itself had previously decided. Specifically, the trial court previously determined that Husband's petition to confirm the oral MSA accurately reflected the parties' intentions with respect to the distribution of their marital assets, including their intentions regarding the

distribution of the house account. After making this factual determination following the June 11, 2015 hearing on Husband's petition to enforce oral MSA, the trial court ordered Husband to draft an MSA for execution that reflected the terms of the parties' oral agreement as set forth in Husband's petition to confirm the oral MSA which, among other things, provided that the house account was to be used to pay the mortgage down and to pay Wife's closing costs to refinance the mortgage, with the remainder to be distributed to Wife. While paragraph 11(a) of the MSA clearly excludes the house account as a joint account to be distributed to Husband, it was Husband's responsibility to draft paragraph 13(c) to reflect the parties' agreement with respect to the distribution of that account, as the parties stipulated, as the trial court accepted, and as the trial court directed in its June 30, 2015 order. Despite its June 30, 2015 order, the trial court subsequently determined that while the terms of the executed MSA were ambiguous, that Wife then failed to prove that the parties intended that the house account be distributed to her and, as such, permitted Husband's liquidation of the account. Under these circumstances, while the law of the case doctrine does not apply, the goals of the law of the case doctrine are, at the very least, instructive. Specifically, Wife had settled expectations with respect to the house account that require protection; the trial court's decisions regarding distribution of the house account must be uniform in order to effectuate those expectations; the decisions rendered in this single

divorce action by Judge Cordaro require consistency; in this case, as in all cases, justice must be administered and effectuated; and this litigation must come to an end.

We have carefully reviewed the record in this case and are constrained to find that the trial court abused its discretion when it entered the August 17, 2017 order denying Wife's motion to enforce the executed MSA with respect to the house account based on the trial court's determination that Wife failed to prove her entitlement to those funds. The trial court's June 30, 2015 order adopted the terms of the parties' oral MSA as set forth in Husband's petition to confirm the parties' oral MSA which sets forth the parties' agreement as to the distribution of the house account for Wife's ultimate benefit. As such, Wife was not required to prove the parties' intentions with respect to the distribution of the house account at the hearing on her motion to enforce the executed MSA simply because the trial court had already determined the parties' intentions. Therefore, we reverse the August 17, 2017 order and remand with instructions consistent with this memorandum.[5]

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>7/12/2018</u>

---

[5] Our disposition of Wife's first issue on appeal renders Wife's second issue on appeal moot.